*In re* HARRIET KING, *Petitioner*.

No. 13,272.   (72 Pac. 263.)

SYLLABUS BY THE COURT.

HABEAS CORPUS—*Minor Children—Res Judicata.* The judgment of a court in a proceeding in *habeas corpus* with regard to the custody of a child will not prevent another court from afterward making a different order, where the welfare of the child requires it, even though no material change of circumstances be shown.

Original proceeding in *habeas corpus.* Opinion filed April 11, 1903. Petition denied.

*David Ritchie*, for petitioner.

*Z. C. Millikin*, for respondents.

The opinion of the court was delivered by

MASON, J. : This is an original proceeding brought by Harriet King to obtain the custody of Harry J. Hines, aged six years, and Edith May Hines, aged four years. The parents of these children were married in 1895, the mother being then about seventeen years of age. They lived near Brookville, in Saline county, Kansas, until 1897, when they went to Kansas City, Kansas, where in February, 1900, the mother was granted a divorce from the father on the ground of non-support and abandonment. The decree made no reference to the children, who had been left with the father's mother, Harriet King, the petitioner in this case, in Saline county. In March, 1901, the mother was married to James E. Peck. In the following July she applied to the probate court of Saline county for a writ of *habeas corpus* by which she sought to have the custody of the children restored to her. Mrs. King, the respondent in that proceeding, re-

sisted the order sought, and after hearing testimony the court, on August 4, remanded the children to her custody and awarded her their care and control until "changed in the manner prescribed by law." On August 15, 1901, Mrs. Peck made another attempt to procure the custody of the children by applying to the district court of Saline county for a writ of *habeas corpus*. Mrs. King, as the respondent, made return setting up among other matters the proceedings in the probate court. This part of the return was demurred to, and the court overruled the demurrer and dismissed the cause. On the 21st of July, 1902, Mrs. Peck and her husband went to the home of Mrs. King, took the children, and removed them to their home. The present proceeding was begun August 5, 1902. Much testimony has been taken on behalf of each of the contending parties, the grandmother and the mother, to show that the other is unfit to be entrusted with the care of the children.

The petitioner claims that the orders of the probate and district courts form a bar to the present proceeding; that the whole matter here presented for litigation has been already determined by a court of competent jurisdiction, and is not subject to further judicial investigation. It has frequently been held that the doctrine of *res judicata* applies to the decisions of courts in *habeas corpus* cases where the purpose of the writ is to obtain the custody of children. (15 A. & E. Encycl. of L., 2d ed., 213.) See, also, the case of *In re Hamilton*, post, 71 Pac. 817, and cases there cited. Granting the correctness of the legal proposition stated, it only applies so long as the situation of the parties is the same. In the present case there is testimony with regard to the treatment the children received at the hands of their grandmother after the

*In re* King.

termination of the proceedings in the probate and dis-
trict courts, which, if accepted as true, would justify
this court in changing their custody, upon the theory
that a new condition had arisen, materially different
from that existing when the former adjudication was
had. But there is also presented testimony to the
contrary, and, as the testimony is all in writing, it
would be difficult to reach a satisfying conclusion as
to the actual facts in this regard, and we shall not
attempt it, but shall decide the case upon other con-
siderations.

A proceeding in *habeas corpus* relating to the custody
of a child must be viewed in two aspects. In form,
the writ purports to afford an inquiry into the ques-
tion whether the child is unlawfully restrained of its
liberty. In fact, it is ordinarily a means for investi-
gating and determining which of two parties has the
better right to the custody of a child. Some of the
decisions, and perhaps all of them, in which it has
been held that a ruling upon one application is an ab-
solute bar to all inquiry upon a second application
based upon the same state of facts, assume that the
matter is to be treated merely as a private controversy
between adverse claimants to the custody of the child.
A typical case is that of *State v. Bechdel*, 37 Minn. 360,
34 N. W. 334, 5 Am. St. Rep. 854, where it was said :

"In *In re Snell*, 31 Minn. 110, this court held that a
decision, under one writ of *habeas corpus*, refusing to
discharge a prisoner, is not a bar to the issuing of
another writ, based upon the same state of facts, nor
to a hearing and discharge thereon. While there is
room for a difference of opinion, and in fact a conflict
of decisions, upon this question, yet, in view of the
origin, history and purposes of this writ as a 'writ
of liberty,' we adopted this rule in this class of cases
in which the liberty of the citizen is the question di-
rectly involved. But such cases are clearly distin-

guishable, we think, both upon principle and authority, from those in which the writ is sued out merely for the purpose of determining which of two parties is entitled to the custody of an infant child. In the latter the question is not really whether the infant is restrained of its liberty, but who is entitled to its custody? It is true that the charge is that the child is unlawfully restrained, etc. ; but the gist of this charge is not that the child is unlawfully deprived of its liberty, but that such restraint is in prejudice of the right of the relators to its custody. The case is really one of private parties contesting private rights, under the form of proceedings on *habeas corpus*.''

We agree that, so far as such a proceeding is to be considered as a mere trial of conflicting private rights, there is no reason in the nature of things why the doctrine of estoppel by former adjudication should not apply. But we think that the proceeding is in a measure just what it purports to be—an investigation into a charge that a child is illegally restrained of his liberty ; that is, that he is restrained by a custody that is illegal in the sense that it is not for the child's best interest. In such a view, the interest of the child being as sacred as the liberty of the citizen, the question of the effect of a former adjudication might be determined upon the same considerations as in an ordinary *habeas corpus* case. Although in *Weir v. Marley*, 99 Mo. 484, 12 S. W. 798, 6 L. R. A. 672, the court held to the accepted rule of estoppel, it used this language :

''The distinction made between judgments remanding and those discharging the prisoner grows out of the nature of the writ, whose *raison d'etre* is the protection of personal liberty. It loses none of its characteristics when used for the purpose of obtaining the custody of children, and the same analogies ought to obtain in such cases as when used simply for the purpose of discharging a prisoner from illegal restraint.''

Regardless of the analogy to the ordinary *habeas corpus* proceeding, however, we hold that the doctrine of estoppel does not preclude a court, in any case where it has acquired jurisdiction, from making such order with regard to the custody of a child as shall be for the child's best interest. The parents have ordinarily a legal right, to the custody of their children. It is not an absolute and unqualified right, but it is a real right, with which a court may interfere only upon a showing of exceptional circumstances. When a court in a proper proceeding, wherein conflicting claims to the right to the custody of a child are litigated, takes the custody from the parents and bestows it upon some other person, the legal right of the parent is to that extent extinguished and the new custodian has in that respect the same right formerly held by the parents. The parents may not dispute such right nor relitigate it, except upon a new state of facts. But the court has the same power to change the custody as against the new custodian as it had originally against the parents. (*In re Bort, Petitioner, etc.*, 25 Kan. 308, 37 Am. Rep. 255.)

It is true that in the cases where the doctrine of *res judicata* is applied in its widest scope the welfare of the child is given great and even controlling effect, this consideration being treated as qualifying the legal rights of the claimants. Yet in other cases it is said that the custody of a child will be awarded as his own welfare may require, because the interest of the child will override the legal right and authorize an order in spite of such right. (15 A. & E. Encycl. of L., 2d ed., 187, and cases there cited.) Whether the welfare of the child is properly spoken of as modifying the legal right or as justifying an order in opposition to the right may not be important, but the distinction

between a question as to the comparative rights of two conflicting complainants and one as to what is for the best interest of a child is real and vital. The former may be controlled by a prior adjudication, but the latter is always open.

In the present case, then, we assume that the judgment of the probate court of Saline county determines the respective legal rights of the grandmother and the mother, and as against the mother places the right to the care of the children with the grandmother; and that the mother is estopped by such determination, and cannot relitigate the matter in this court unless upon a showing of a material change of conditions since that judgment was rendered. But nevertheless the responsibility is cast upon this court, which it cannot avoid if it would, of deciding what order herein is for the best interest of these children. In a matter of such importance to them and of such inherent delicacy, it is to be regretted that more adequate means of information as to the exact facts are not afforded. This court cannot undertake to say just what portion of a mass of contradictory testimony is to be believed. From the spirit of bitterness that characterizes much of it, it is entirely probable that both charges and countercharges are untrue.

The decision of the probate court is entitled to weight, but as the evidence in that court is not before us such decision must be considered in the light of the depositions on file here, which seem to cover all phases of the controversy. We shall reach a determination upon a general view of the situation, rather than upon an attempted resolution in detail of the disputed issues of fact. The custody is asked by the grandmother, who is sixty-two years of age, and who is living alone. The children are now, and have been, for over nine

months with their mother, who is living with her present husband, a man of good habits, against whom nothing is alleged, and who professes an interest in, and affection for, the children as though they were his own. It is too clear for argument that in the case of children of such tender years, having regard alone to their own welfare, leaving all other matters out of consideration, their proper place is with their mother, unless it be found that she is unfit for the trust or incapable of caring for them, and the evidence in this case does not warrant such a finding.

The children will be committed to the custody of Emma Peck, their mother.   The costs of this proceeding, in view of all the circumstances of the case, will be taxed to respondents, James E. Peck and Emma Peck.

All the Justices concurring.

BURCH, J., not sitting, having been of counsel.