No. 14,414.

IN RE McCHESNEY.

McCHESNEY v. McCHESNEY.

(83 P. [2d] 772)

Decided October 3, 1938.

Mr. JAMES R. HOFFMAN, for plaintiff in error.

Mr. JOHN W. METZGER, Mr. FRED W. MATTSON, for defendant in error.

116

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

This cause is before us on writ of error to the juvenile court of the City and County of Denver. Proceedings were instituted in that court entitled "In the matter of the People in the Interest of Robert McChesney, minor, upon the petition of Ethel McChesney, and concerning John L. McChesney." Robert McChesney is the twelve year old son of Ethel and John L. McChesney. The petitioner Ethel McChesney charged that Robert McChesney, then in the custody of respondent, John L. McChesney, under decree of the district court of the City and County of Denver entered in divorce proceedings between Ethel McChesney and John L. McChesney was a dependent child for the following reasons:

"That it is entitled to support or care by its parent or parents, and said parent or parents is failing or refusing and has failed and refused to support or care for it.

"That a controversy exists about its custody of such a nature as to warrant the State in the interest of said child in assuming or determining its guardianship or in determining what may be for its best interest."

Upon issue joined and trial, a jury found Robert McChesney to be a dependent child as alleged in the petition and the court by its judgment awarded his custody to the mother and ordered the father to pay twenty dollars a month for his support. To review this judgment John L. McChesney prosecutes error.

By assignment of error, supported by a sufficient record, plaintiff in error raises the question of the jurisdiction of the juvenile court to hear the issue raised by the petition and answer thereto. We shall assume, without ruling on the matter, that the court had such jurisdiction, for our ruling on another assignment of error raising the question of the sufficiency of the evidence makes it

unnecessary to determine the matter of the court's jurisdiction.

A brief statement of the situation giving rise to the institution of the proceedings in the juvenile court is necessary to an understanding of the controversy.

In an action in the district court the parents of the minor were divorced in May, 1935. Custody of the minor was awarded to the mother. The father was ordered by the court to pay to the mother $40 a month for the support of the minor. He failed to make these payments as ordered, but for a time did pay $30 a month and finally became in arrears in the payment of the $30 per month and the mother secured a judgment against him in the sum of approximately $280 for unpaid installments. On this judgment she caused a garnishment to be served on his employer—the Denver Tramway Company—which jeopardized his position with that company. Through the good offices of the district court he was retained in his position and the court ordered that he satisfy the judgment by payments of $10 per month. On petition of the father filed in the divorce action, the district court, after a full hearing, entered an order on January 18, 1938, changing the custody of the child from the mother to the father. Immediately after the entry of this order the mother instituted the action now before us reciting in her petition that the child was a dependent child for the reasons as heretofore recited.

On the hearing on the petition in the juvenile court a jury was summoned and testimony was introduced by both petitioner and respondent. The court allowed a wide latitude in the introduction of testimony admitting evidence concerning the family relations as far back as the birth of the minor. It appears from this testimony that the father was high tempered; that due to the economic condition of the family there was much quarreling and bickering; that an older son and daughter—brother and sister of the minor—had left school before completing the high school course, had gone to work and by payment

of board, and the son later by direct contributions, had assisted in the maintenance of the family. At the hearing on the petition the son, then approximately 30 years of age, and the daughter a few years younger and who had come from her home in Arizona to testify in the mother's behalf, both gave testimony tending to show the intolerable situation existing in the home due to the quarreling and bickering between the parents and which finally culminated in the divorce and which clearly indicated that they attached the blame for the conditions to their father rather than to the mother. From the findings of the district court when the order changing the custody of the child from mother to father was entered, and here made a part of the record as an exhibit, it is apparent that there had been testimony of the same nature as that introduced on the hearing on the petition presented in the district court. After considering that testimony the district court transferred the custody of the child from the mother to the father. However much we may question the propriety of the court's action in that respect, it is not here before us for review.

██ Assuming as we have that the juvenile court had jurisdiction to try the issue raised, we are concerned only with the question of whether the evidence discloses a situation such that the state is warranted in assuming control and guardianship of the minor, and not with the relative qualifications of the father and mother to have his custody. It is disclosed by the evidence that the father is sending the child to school; that he is provided with suitable and sufficient clothing, and that he is properly fed. The evidence given by the minor himself, who testified out of the presence of both parents, does not indicate otherwise. It is apparent that he prefers to be in the care of the mother rather than in that of the father, but as between the two a competent court has awarded his custody to the father. Section 1, chapter 33, '35 C. S. A., provides, inter alia, that a dependent child is one "whose environment is such, or about whose custody a contro-

versy may be such as to warrant the state, in the interest of the child, in assuming * * * its guardianship.'' Under the circumstances of this case we think it cannot be said that a "controversy" exists as to the custody of the child within the sense in which that word is used in the dependency statute. To be sure a controversy had arisen between the parents which had been determined by a court of competent jurisdiction as between the parties and as an incident to divorce proceedings, but dissatisfaction of the mother with the determination of that controversy over the custody does not amount to a new "controversy" within the meaning of that term as used in the statute.

Considering the situation before us we think the mother stood in no other or different position with respect to this child than would any other person if the mother had been dead and the child had been given into the custody of the father by virtue of his rights as natural guardian and an interested person had invoked the jurisdiction of the juvenile court for the purpose of taking the child away from the father and giving it into the custody of the state.

We think the evidence before the juvenile court was clearly insufficient, to support the grounds of dependency alleged in the petition, and the judgment accordingly is reversed.

MR. JUSTICE HILLIARD dissents.