## No. 14,759.

SNYDER ET AL. *v.* SCHMOYER.

(104 P. [2d] 612)

Decided June 17, 1940.   Rehearing denied July 24, 1940.

Mr. GRANBY HILLYER, for plaintiffs in error.

Mr. JOHN F. MUELLER, Mr. TELLER AMMONS, Mr. AL HANSEN, for defendant in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

SCHMOYER, defendant in error, sought and obtained a writ of habeas corpus awarding him the custody of his two and one-half year old son. Plaintiff in error, mother of the child and respondent below, is the divorced wife of Schmoyer. She has remarried and makes her home in Denver with her present husband. Friction marked the domestic life of the parties, and the child was the subject of a great deal of controversy and the cause of apparent ill will between the parents, not unusual in cases of this kind. The petition for the writ was based largely on a judgment rendered by the district court of

Montana after a full hearing on petition filed by the mother, which judgment provided, inter alia, that the parents "are equally, physically, mentally, and morally fit to care for the child * * *. That the parents, both of the parties to the action, shall be entitled to equal custody of said child, that is, for equal periods each year until the child is of school age; * * * That when the child becomes of school age, the mother shall have the custody of the child for nine months during the school year and the father shall have the custody of said child during the summer months of June, July and August * * *."

Custody of the child thus was awarded to the mother September 15, 1939, when she brought it to Denver. Under the Montana decree, the father was to have custody of the boy commencing March 1, 1940, for his regular period; but, the mother refusing to surrender it to him, he instituted this action. The petition for the writ was filed in the district court March 7, 1940; upon which the presiding judge endorsed the following: "Let the writ issue, returnable forthwith at chambers." Meanwhile, the mother, apparently anticipating the action to be taken by the father, filed a "petition in dependency" in the Denver juvenile court March 7, 1940, as indicated by the filing stamp, but which she asserts was lodged there March 5th. It was verified by her November 21, 1939. The delay between verification and filing was explained by the referee of the juvenile court in her testimony as follows: "Q. Do you remember my explaining to you the reason for the delay in filing this petition? A. Yes. Q. What was that explanation? A. As I remember it, you told me that this attorney in Montana had advised against the filing and that you had delayed it until you had received further word from him which lead [led] you to believe that Mr. Schmoyer had made threats concerning this child should he receive its custody." Without making any investigation as to the immediate situation, a dependency order was issued by

the juvenile court, which was served on the father just after he left the chambers of the district court with the child in his custody after he had been awarded a writ of habeas corpus. The juvenile court awarded temporary custody of the child to the mother. Immediately thereafter the judge of the latter court sought a writ of prohibition here (No. 14,765) against the district court, and the mother petitioned for a similar writ (No. 14,766), these two cases being consolidated for oral argument before us. Since all important questions therein raised were involved in the matter now being considered, the child was placed in the custody of the sheriff, as an agent of this court, pending disposition of the present litigation.

Counsel for the mother summarizes the assignments of error, and questions of law involved, as follows:

"1st: The jurisdiction of the district court to enter a judgment disposing of the custody of the child Richard Dean Schmoyer in a habeas corpus proceeding, which question logically involves two branches or sub-divisions, i.e.:

"(a) The question of whether the district court has any jurisdiction under habeas corpus to determine the question of the custody and control of a minor child in a county having more than one hundred thousand population, and

"(b) Conceding for the sake of argument only that such court might have such jurisdiction in a proper case, whether said district court could exercise such jurisdiction in view of the proceeding in dependency involving the custody of said child already commenced and pending in the juvenile court at the time of the initiation of the habeas corpus proceeding.

"2nd: Whether the rule of law that the welfare and best interests of the child involved is the controlling factor in *every proceeding* to determine its custody, and whether or not the action of the trial court in the instant case violates this rule."

1. (a) There is no question as to the jurisdiction of the district court in some cases under habeas corpus to determine the matter of the custody of minor children in the City and County of Denver (the only county in the state having a population of over 100,000). A sufficient general statement on this proposition appears in the case of *Graham v. Francis*, 83 Colo. 346, 350, 265 Pac. 690, where we said, "Jurisdiction in habeas corpus having been full and complete, we are next interested in the propriety of the decision therein * * *." This statement regarding a situation involving the custody of a minor child, was supported by generous authority. "The writ of habeas corpus is a proper remedy on the part of one parent to recover a child from the other parent, either before or after the parents have been legally separated or divorced." 25 Am. Jur. 204, §79. See, also, 29 C.J. 110, §103. The fact that exclusive jurisdiction has been given to the Denver juvenile court in these cases generally, does not deprive the district court of its jurisdiction, unless the jurisdiction of the juvenile court is properly invoked or available. Counsel for the mother does not controvert this statement, for in his reply brief he says: "All of these cases [*Flynn v. Casper*, 26 Colo. App. 344, 144 Pac. 1137; 78 A.L.R. 317; 110 A.L.R. 745] recognize the use of the common-law writ of habeas corpus to determine the custody of a child."

(b) Could the district court exercise its jurisdiction in view of the proceeding in dependency, involving custody of the child, already commenced and pending in the juvenile court at the time of the initiation of the habeas corpus proceeding? Categorically the question should be answered in the negative, but it assumes too much under the facts and circumstances in this case. Several preliminary questions must be considered. In the first place, as already indicated, the mother must have anticipated disregarding the Montana court judgment almost as soon as she reached Denver in view

of the fact that her petition was verified shortly after arriving in that city. Assuming she was acting in good faith, it is not reasonable to believe that there could have been any such changed conditions as would justify a re-litigation of the facts already recently determined by the Montana court; consequently we are of the opinion that estoppel by judgment is available against her. *Knapp v. Tolan,* 26 N.D. 23, 142 N.W. 915, 49 L.R.A. (N.S.) 83; Ann. Cas. 1916 D 511. This latter case was one in which a mother sought to have readjudicated the facts which had been determined by another court within two months. In the present case there was much discussion of the question as to whether the Montana judgment was a consent decree. That point is not important, "Since parties are bound by judgments rendered by courts of competent jurisdiction, whether they expressly agree to the judgment or not, an express agreement that a particular judgment should be rendered gives to that judgment no peculiar character and renders it no more sacred than the ordinary judgment." 15 R.C.L. 645, §90. Nothing would seem to be better settled in this jurisdiction than that "parties who have voluntarily submitted their controversy to a court having jurisdiction of the subject matter, cannot be allowed to question its authority." *Graham v. Francis, supra,* p. 354. It is immaterial that the form of action is different. 15 R.C.L. 964. "An adjudication in one habeas corpus proceeding to determine the custody of a child is almost uniformly held to be conclusive on the parties, or res adjudicata in a similar proceeding on the same state of facts. * * * We think that an adjudication of such a matter in the juvenile court is likewise conclusive on parties on the same state of facts." *State ex rel. v. West,* 139 Tenn. 522, 201 S.W. 743, Ann. Cas. 1918 D 749. We see no good reason why this rule should not apply as between the district court and the juvenile court so far as the merits of the case are concerned. Secondly, the juvenile court was without jurisdiction to

proceed with any action on the ground of dependency. It is admitted that the only basis for possible jurisdiction of that court was that the child was one "about whose custody a controversy may be such as to warrant the state, in the interest of the child, in assuming or determining its guardianship, or in determining what may be for the best interest of said child." '35 C.S.A., c. 33, §1, C.L., §602. This does not mean that every possible controversy arising concerning the custody of a child ipso facto gives the juvenile court jurisdiction. "To be sure a controversy had arisen between the parents which had been determined by a court of competent jurisdiction as between the parties and as an incident to divorce proceedings, but dissatisfaction of the mother with the determination of that controversy over the custody does not amount to a new 'controversy' within the meaning of that term as used in the statute." *McChesney v. McChesney,* 103 Colo. 115, 119, 83 P. (2d) 772.

While it is true that the McChesney case was before us on a writ of error from the juvenile court, that is not important, because the determining factor was the lack of evidence on a jurisdictional question which, had it been passed upon by another court of competent jurisdiction, would have precluded assumption of jurisdiction by the juvenile court. In the instant case the "petition in dependency," upon which jurisdiction in the juvenile court is based, together with a general demurrer lodged against it, and the offer of proof made by the mother in this proceeding in the district court, as well as the judgment roll of the Montana court are before us.

There are no new facts alleged in the petition for dependency such as would constitute "changed conditions," affecting the welfare of the child. In reality the mother merely asks for a reconsideration of the judgment of the Montana court by the juvenile court, as is apparent from the following language: "That the best interests and welfare of said child will be seriously jeopardized

by the enforcement of any such order as that hereinbefore referred to and that a continuation of the same makes the question of the right of the care, nurture, training, control and education of said child a matter of supreme importance to its welfare and best interest * * *."

While in the McChesney case we assumed the juvenile court had jurisdiction—because it was not challenged—the opinion is authority for upholding the rule that if there is no new "controversy," as that word is used in the statute, a suit in the juvenile court may not be maintained and supported by the same evidence upon which a competent court already has acted.

Concerning the mother's offer of proof, there are only two matters suggested which may not have been before the Montana court: (a) "That the child needs some medical attention which can be given here." No evidence was offered to show that whatever treatment may be necessary is not available in Montana. The answer to the writ alleges that the child needed an operation for adenoids, but it was not disclosed why it had not received this attention during the eight months it was in the mother's custody. (b) "That said petitioner has threatened that if said child is returned to his custody and possession, he will take the same out of the jurisdiction of this court and out of the United States and into Canada and there keep said child from said respondent, its mother." The allegation in her petition to the Montana court was practically the same as that quoted, although she did not specifically mention "out of the United States and into Canada."

It would hardly be proper for a Colorado tribunal to adjudicate a possible contempt matter arising in the court of another state. In connection with the offer of proof to substantiate the above allegations it may also be noted that in the oral argument before us, it was not contended that there were "changed conditions" justifying a change in the custody awarded by the Montana

court. *Knapp v. Tolan, supra.* See, also, *Re King,* 66 Kan. 695, 67 L.R.A. 783.

In the case of *Ross v. Ross,* 89 Colo. 536, 541, 5 P. (2d) 246, we said: "In the present case the institution of the dependency proceeding in the juvenile court did not deprive the district court of jurisdiction to hear and determine the father's petition. We cannot sustain the contention of counsel for the mother that the district court had no jurisdiction to modify its decree so as to award to the grandparents the custody of Joan." Again we quote, inter alia, from '35 C.S.A., chapter 46, section 200, C.L. §5811. "Nothing in this article shall be construed to revoke or interfere with the jurisdiction, practice or proceedings as now provided by law in other courts of record in this state, in cases in such courts relating to the custody or disposition of children in divorce cases." While this language is qualified by the subsequent provision that such jurisdiction shall not "interfere with the jurisdiction of the juvenile court in cases concerning the dependency of such children," the latter language is to be construed as meaning dependency in fact and not a fictitious condition.

■ "It never has been, and never can be, the law that in such a case both the child and its custodians can be dragged from court to court and subjected to a ceaseless round of discomfort and litigation at the whim of the petitioner." *Knapp v. Tolan, supra,* p. 26.

■ Since, we examine the facts in cases of this character (*People ex rel. v. Bolton,* 27 Colo. App. 39, 146 Pac. 489), we are satisfied from our inspection of the record in the present proceeding that the little boy is not "a dependent child" within the meaning of those words as used in the statute, and that the attempted proceeding in the juvenile court was at the "whim of the petitioner" with no basis in fact for intervention on the part of the state as "parens patria."

■ 2. It is unnecessary to here decide whether the welfare and best interests of a child are the controlling

factors in every proceeding to determine custody of children, but we accept this statement as applicable to this case. Did the trial court violate that rule in relying almost entirely on the judgment of the Montana court? We think not.

The trial judge in commenting on the case at the time of overruling the demurrer said: "In this case the judgment and decree of the Montana court shows upon its face that the court had full and complete jurisdiction not only of the subject matter but of the parties; that it made a complete determination of every issue of fact that could possibly be raised in a controversy over the custody of the child, and made what appears to the court here as a fair and equitable determination of that issue. If the court felt that it was necessary to go into that question from what has appeared here, the court would not be inclined to reach a different conclusion from that already reached by the Montana court." Thus the court directly incorporated the provision of the Montana decree "that it is for the best interest of the child" that the arrangement therein promulgated should control. In other words, as already indicated, and so far as the welfare of the child was concerned, the situation was unchanged, and since this situation confronted the court in passing on the demurrer to the writ, there can be no question that the welfare of the child was the factor controlling the court in reaching its decision.

From the almost universal effort now being made to enable city children to enjoy out-door life in the country for short periods, it would appear that the net effect of this whole litigation, permitting the child to spend part of the time with his father on a Montana ranch, is in line with what is recognized as being for the best interest of all children, and since it has been found judicially that the parents are "equally fit," to care for the child, much could be said in favor of the boy's remaining on the Montana ranch a part of each year. Many a man has only the fondest memories of happy, healthy

childhood days spent on a western ranch, though he may not have been better fed or clothed than "the barefoot boy," and no court need concern itself as to a boy placed in such circumstances being a "dependent child."

The judgment is affirmed, and it is ordered that the sheriff deliver the child to the father, on condition that he pay into the registry of the district court such reasonable amount as that court shall direct for the care of said child during the time that it has been in the custody of the sheriff under our order.

MR. JUSTICE BOCK concurs in the result.

MR. CHIEF JUSTICE HILLIARD, MR. JUSTICE FRANCIS E. BOUCK and MR. JUSTICE YOUNG dissent.