No. 15,792.

PETERSON *v*. SCHWARTZMANN ET AL.
(179 P. [2d] 662)

Decided April 7, 1947.

236

Mr. MORTON M. DAVID, Mr. NATHAN I. GOLDEN, Mr. FRED L. SCHWARTZ, for plaintiff in error.

Mr. EARL J. HOWER, Mr. EDWARD H. SHERMAN, for defendants in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

ON the twentieth day of February, 1946, Marie Josephine Peterson obtained an interlocutory decree of divorce from Glen O. Peterson, respondent below and plaintiff in error here, in the county court of Jefferson county, Colorado. By the terms of that decree the mother was awarded custody of their minor daughter, Glenda Jean, then approximately twenty months of age. Less than four months later, after a contested hearing at which the mother appeared in person and by counsel, the court revoked that order and awarded the custody of the child to the father, plaintiff in error, Glen O.

Peterson, who thereupon placed the child in a registered and licensed nursery home south of the Denver line in Arapahoe county. Seventeen days after the award of custody to plaintiff in error, the parents of Marie Josephine Peterson, B. W. and Izora Richards, together with a state humane officer, filed petition in the county court of Arapahoe county in which both Glen O. Peterson and Marie Josephine Peterson were named as respondents, alleging that said minor was a dependent child and asking that she be so adjudged. Marie Josephine Peterson promptly filed answer admitting the allegations of the petition and joining therein and asked that the custody and care of the minor child be awarded to her parents, the petitioners therein. The record discloses that she, with her three minor children by other marriage, was residing in the basement apartment of her parents' home so that their custody of the child would virtually be hers. After apt challenge to the jurisdiction had been overruled and answer denying dependency filed, the matter was heard to the court on July 30, 1946, when the child was adjudged to be a dependent and her custody awarded to petitioners Richards. Of the several grounds for reversal here urged we need consider only two: first, as to the jurisdiction of the court, and second, as to the sufficiency of the evidence.

■ Jurisdiction was first challenged on the ground that the county court of Jefferson county had acquired jurisdiction over custody of the child as an incident to the divorce proceeding, and that its jurisdiction was exclusive. This contention is true as between the parties to that proceeding; but the nature and objects of the two proceedings are different. The one involves preference as between the parents; the other, the duty of the state to interfere. "The jurisdiction of the divorce court is exercised as between the husband and the wife; that of the juvenile court, 'as between the state, or, so to speak, the child, and the parents of the child.' * * * The two courts may have simultaneous, though not concurrent,

jurisdiction concerning the custody of the child." *Ross v. Ross,* 89 Colo. 536, 6 P. (2d) 246.

Challenge was further interposed to the jurisdiction of the Arapahoe county court on the ground that the father to whom the custody of the minor had been awarded was a resident of the City and County of Denver; that the legal residence of the minor followed that of the parent having custody, and that the county of residence was the proper county in which to bring the action. *Hudson v. Mattingley,* 69 Colo. 528, 195 Pac. 113, is cited in support of this contention. The statute ('35 C.S.A., chap. 33, §2) provides that county courts and juvenile courts in the several counties shall have jurisdiction in dependency cases. The county court of Arapahoe county has jurisdiction over the abstract subject of judicial inquiry equally with the juvenile court of the City and County of Denver. The question here raised, and the question discussed in *Hudson v. Mattingley, supra,* is not, then, one of jurisdiction, but rather one of venue. The statute, section 3, chapter 33, '35 C.S.A., provides that any officer therein specified "or any person who *is a resident of the county,* having knowledge of a child *in his county* who appears to be a dependent or neglected child, may file with the clerk of the county court, or juvenile court, a petition * * *." (Emphasis supplied.) Where the proper officer files a petition in dependency in the county where the child is found and the conditions alleged as constituting dependency also exist therein, as in the instant case, the venue of a dependency action is in such county despite technical legal residence elsewhere. In *Hudson v. Mattingley, supra,* the children resided in Denver and the conditions alleged as constituting dependency existed in Denver. At the time of filing the petition in dependency in the Denver court the children named in the petition were temporarily visiting outside the county, and it was held that, notwithstanding such temporary absence the proceeding was properly brought in Denver. No such situation here

exists. The objections to the jurisdiction of the court are not well taken.

■ In a dependency proceeding, the only matter at issue before the court in the first place is that of dependency. If the child is found not dependent, then there is nothing further to be considered and the action should be dismissed. If the child shall first have been found dependent upon proper evidence, then, and only then, should the court in orderly procedure, receive evidence concerning, and determine, the custody of the child. In the instant case the petition by liberal construction charges dependency as defined in the statute upon the following grounds; that the child has not proper parental care or guardianship; that her environment is such, and that as to her custody a controversy is such, as to warrant the state, in the interest of the child, in assuming or determining its guardianship or in determining what may be for the best interest of said child; and that the respondent does not have a proper home for the child and it is now being cared for in a nursery in Arapahoe county. The record of the petitioners' testimony consists of over five hundred folios. In all that testimony the only evidence remotely tending to establish dependency was as follows: The grandfather, himself seeking custody of the child, testified that plaintiff in error did not provide a home for the child and made no attempt to provide it with a home, but placed the child among strangers where she had never been before, where she knew no one, and that he called the little girl "Janie" from her middle name instead of using her first name Glenda. The grandmother, likewise seeking custody, testified that the father had placed the child in a nursery far from its father and mother, that they did not see it often and that the child had no love and training that parents should give a child; that the father had never provided a home for the child and had placed her among strangers. Finally, the mother, who had been deprived of the custody of the child in the

divorce proceeding, and who was in effect again seeking the custody with her parents here, testified that the father had taken the child among strangers and that she did not have the affection nor care she would have had in her own home, and that the father couldn't see her as often as he should. There is no testimony by any witness to suggest that such witness had visited or even seen the home where the child was being cared for or had the slightest knowledge as to her surroundings or care or the affection shown her. In behalf of plaintiff in error the evidence shows that he had furnished ample clothing for the child, who was destitute thereof when taken from her mother; that he had placed her in a licensed and registered home for children where there was one other little girl being kept permanently and one or two more through the day; that he had paid for her maintenance, that he had visited her twice a week, and had taken her for a weekly ride; and that he was labor representative or business agent for the hod carriers and common laborers, A. F. of L., so that it was apparent that he could not personally devote his full time to the child. By ample and undisputed evidence it was established that the home where the child was placed was clean and well kept, and that Mrs. Cooper, who was in charge of the home, served good food and kept the child in a satisfactory way. One neighboring mother testified that Mrs. Cooper treated the child the same as the witness treated her own. Another woman testified that she had kept her child there for two years and that Mrs. Cooper was very capable, very cleanly, and provided a good substitute for a permanent home, and a third mother, who was employed during the daytime, testified that she kept her little girl there daily from seven until five and that she received excellent care.

In ruling on the testimony the court said: "This is a very hard case to determine, because, apparently, the child is being taken care of physically," and he made the further statement (entirely unsupported by evidence)

that he understood that the woman who was caring for the child "could not give love and affection that a parent could."

From the record it is patent that the court misconceived its function, and undertook to retry the issue of custody between the father and mother when there was no evidence submitted having the slightest probative force to establish the allegations of the petition as to dependency and with substantial and undisputed evidence refuting them.

The state humane officers who participated in the proceeding and verified the petition in dependency without furnishing one word of testimony to support it, and apparently without ever investigating or seeing the place where the child was kept or having knowledge as to its dependency, went beyond the proper function of their office. Such an officer represents the state, not a party to a dispute over custody of a child. He should not file a petition without knowledge of facts justifying belief of dependency, and, when filed, should see to it that evidence is presented supporting his petition.

If the best interest of the child would be served by awarding her custody to the grandparents, as here sought, they are not without remedy. The order of the Jefferson county court is always subject to being reopened upon proper showing of change of situation, if justification appears.

The case is remanded with instructions that the proceedings be dismissed.