## No. 16,554.

### IN THE MATTER OF THE PEOPLE IN THE INTEREST OF KATHLEEN ANN MURLEY.

#### MURLEY v. MURLEY.
(239 P. [2d] 706)

Decided December 24, 1951.

Mr. WILLIAM H. SCOFIELD, for plaintiff in error.

Mr. THOMAS W. NEVIN, for defendant in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

KATHLEEN ANN MURLEY, the daughter of plaintiff in error, was adjudged a dependent child in the juvenile court; the father was ordered to pay $30 per month, payable $7.50 each Monday, into the registry of the court, which the clerk was instructed to turn to the mother; the child was placed in the custody of the mother until further order of the court, and the father was granted right of reasonable visitation with the child. Thereafter, without notice to the father or hearing or order of court, but apparently with the informal approval of the probation officer, the mother took the child to the state of Massachusetts without any provision or suggestion of future return to the State of Colorado or of any further control of the child by the juvenile court. Upon learning that the child had been removed from the jurisdiction, the father ceased making payments as required by the court's order.

After delinquency in payment had reached the total of approximately $600, the father was served with citation to show cause "why there should not be further hearing re support" and filed answer thereto reciting the removal of the child from the jurisdiction of the court to the state of Massachusetts without notice or order and the loss of his right of visitation in accordance with the court's order and his ceasing payment of money for that reason. Without hearing on that citation and answer, the father was promptly served with citation in contempt, issued on affidavit of a probation officer, for failure to make payments as provided by the order and, upon hearing on such citation, the facts hereinabove recited were shown, together with evidence disclosing without contradiction that the father was a tractor driver with a mortgage of $7,000 on his equipment and other debts of about $3,500; that creditors were threatening to garnishee his earnings; that he had approximately $500 or $600 due him, and that he had

no other assets except household goods. Thereupon, without any finding except as to the amount then in arrears, the father was adjudged guilty of contempt and ordered committed to the County Jail forthwith "for a period of 90 days, or until such time as this $600 is paid."

■ Under the provisions of Rule 107, R.C.P. Colo., "If the contempt consists of the failure to perform an act in the power of the person to perform he may be imprisoned until its performance. In addition thereto, to vindicate the dignity of the court, if the citation so states, a fine or imprisonment may be imposed."

As appears from said rule, we recognize two types of civil contempt: One, consisting of a present refusal to perform an act in the power of the person to perform, which normally constitutes injury to others for whose benefit it is required; the other, conduct which is derogatory to the authority or dignity of the court. In the former case, the court may order the respondent imprisoned, not for a definite time, but until he performs the act which he is commanded and is able to perform; in the latter case, the court may order punishment to vindicate the dignity of the court by fine or imprisonment, or both, which should be definite as to amount and time, regardless of subsequent compliance with the court order. In the former case, the court must upon hearing make finding both of the facts constituting contempt and of present duty and ability to perform; in the latter case, the court must make finding of facts constituting misbehavior and that the conduct is offensive to the authority and dignity of the court.

■ While punishments for the latter type of contempt are discretionary, the court not only may inquire as to jurisdiction and regularity of procedure, but also may determine whether or not the punishment imposed is so excessive and incommensurate with the gravity of the offense as to be arbitrary and vindictive. While the court here made no finding thereon, it appears without dispute that the father ceased making payments as ordered by the court only after the mother had taken the child to Massa-

chusetts, and that in such situation in good faith he thought he was not obligated to continue payments thereafter. He was not without reason for such conclusion. Even in divorce proceedings, "While the cases are not in complete accord, it appears generally to be held that if a wife is guilty of violating the provisions of an agreement between her husband and herself as to the custody of their children, the husband is relieved of making further payments for the support of such children, whether such payments are provided for in the agreement between the parties or have been adopted in a subsequent decree of divorce." 17 Am. Jur. 536, section 705. *Barnaby v. Barnaby,* 290 Mich. 335, 287 N.W. 535; *Craig v. Craig,* 157 Fla. 710, 26 So. (2d) 881; Ann. 172 A.L.R. 888.

■■ Although intention is not necessary to constitute contempt, it "goes to the gravamen of the offense." *Hughes v. People,* 4 Colo. 436. Especially in the absence of intent, "The power to punish for contempt should be used sparingly, with caution, deliberation, and due regard to constitutional rights; it should be exercised only when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice." 17 C.J.S. 68, section 57. In the situation before us, there was no showing of conduct which could justify imprisonment for a period of 90 days, and in that respect the order was arbitrary and oppressive.

The court failed also to make any finding as to the father's then ability to make payment of the amount in arrears which he was ordered to pay instanter, while the evidence discloses without contradiction that he was then unable to make immediate payment of the full amount. Accordingly, the court's order is without findings or supporting evidence necessary for an order to enforce performance of an act in the power of the respondent to perform, as well as without findings necessary for an order to vindicate the dignity of the court.

■■ The situation before us poses a still more difficult question. We must note that this is not a proceeding

in divorce or in equity concerning custody and support of a child, but a proceeding in the juvenile court. As we said in *Abbott v. People*, 91 Colo. 510, 16 P. (2d) 435: "The juvenile court is not a constitutional court. It is a court created by statute and possesses only such powers as the statute properly confers upon it." It has not been given jurisdiction to determine the relative rights of custody or support in an issue between the father and mother. Where such an issue existed in the district court, we said in *Ross v. Ross*, 89 Colo. 536, 5 P. (2d) 246, "The proceedings in the two courts are between different parties. Dependency proceedings are required to be entitled 'the people, in the interest of the child, * * * and concerning' a named respondent." "In a divorce suit, on the other hand, the parties of record are the husband and the wife * * *. The jurisdiction of the divorce court is exercised as between the husband and the wife; that of the juvenile court, 'as between the state, or, so to speak, the child, and the parents of the child.' " In the divorce proceeding, the court determines which of the parents is better qualified to have custody. In the dependency proceeding, "we are concerned only with the question of whether the evidence discloses a situation such that the state is warranted in assuming control and guardianship of the minor, and not with the relative qualifications of the father and mother to have his custody." *McChesney v. McChesney*, 103 Colo. 115, 83 P. (2d) 772. Only when a child has been adjudged dependent and its control assumed by the state does the juvenile court determine the question of its custody and such custody is in behalf of the state. *Peterson v. Schwartzmann*, 116 Colo. 235, 179 P. (2d) 662.

██ ██ Upon adjudication of dependency, all right of the parents as to custody is lost. The child may be committed to the state home or to any other custodian as may be determined by the court. If it is assigned to a parent, the parent acts not as such, but as a representative of the state, and is subject to visitation or inspection

by the State Bureau of Child and Animal Protection, the State Board of Charities and Corrections, probation officers, or any person appointed by the court for such purpose; the court may require reports as to the care and training of the child, as well as of ability to care for it; the court may impose conditions for the care of the child or may change its guardianship if at any time it is made to appear that the same is detrimental to the child or unsatisfactory to the court. Chapter 33, section 12, '35 C.S.A. The boards and officers entrusted with the duty of visitation and control have no authority or opportunity to act beyond the boundaries of the state. When a dependent child is removed from the state, under circumstances here appearing, the court loses its jurisdiction and power to impose conditions or direct change of custody; there is no authority left in any arm of the state for visitation or inspection to enforce the Colorado decree of dependency, and the state thereby loses all supervision and control whatever over the child.

Since the juvenile court has not been given jurisdiction to award support money to a wife, any payments required from a father must be to and for the use of the court and may be paid over by the court only to the custodian acting in its behalf and under its control.

It must follow necessarily that when the state relinquishes its control over a dependent child by permitting it to be taken without its jurisdiction and control, it can no longer properly contribute or supply funds toward its care and maintenance, whether such funds be public funds or funds received by it from a father obligated for its support.

Accordingly, in the instant case, when the juvenile court permitted the mother to take the dependent child to the State of Massachusetts, without security, term or condition for its return, it abandoned control and lost jurisdiction of the child and could no longer properly transmit or require payment for its support.

The judgment is reversed and the case remanded with instruction to dismiss the contempt proceeding.

MR. JUSTICE HOLLAND dissents.