23CA1507 Marriage of Rogers 11-14-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1507
Mesa County District Court No. 18DR30199
Honorable Gretchen B. Larson, Judge

---

In re the Marriage of

Jared Con Rogers,

Appellee,

and

Mickie Lynn Rogers,

Appellant.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE BERNARD*
Welling and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 14, 2024

---

Drew Moore, Grand Junction, Colorado, for Appellee

Smith Balicki Finn Laraway, LLC, Kathlyn A. Laraway, William D. Taylor, Centennial, Colorado, for Appellant


* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1　　This is a dissolution of marriage involving a wife, Mickie Lynn Rogers, and a husband, Jared Con Rogers.  Wife appeals the district court's order adopting a magistrate's judgment imposing remedial contempt sanctions.  We affirm.

## I.　Background

¶ 2　　Wife and husband married in 2008.  In 2018, husband petitioned to dissolve the marriage.  After holding two hearings, a magistrate issued a decree of dissolution and final orders.  As is pertinent to our analysis, the magistrate found that husband and wife owned marital property worth about $535,000.  The equity in the marital residence was part, but not all, of this figure.

¶ 3　　The magistrate ordered

- husband and wife to divide the equity of the marital residence, allocating sixty percent of it, or $154,302, to husband, and forty percent of it, or $102,868, to wife; and

- wife to refinance the marital residence in her name only by January 29, 2021, and to pay husband an equalization payment of $154,302.

¶ 4　　If wife could not make the equalization payment to husband by January 29, 2021, husband and wife were to select a real estate

agent to sell the marital residence by February 10, 2021, at the latest. Husband and wife eventually extended that deadline to May 2021, and wife paid husband $44,600 in September 2021.

¶ 5     In May 2022, husband asked the magistrate to hold wife in contempt under C.R.C.P. 107 because she had not paid him the rest of the equalization payment. He asked the magistrate to impose a remedial sanction.

¶ 6     The magistrate held a contempt hearing in January 2023, issuing a written order containing the following findings of fact.

    (1) Wife did not pay husband any of the equalization payment before May 2021.

    (2) She later refinanced the marital residence, and she paid husband $44,600 in September 2021.

    (3) She used the rest of the money she had obtained from refinancing the residence to pay her taxes and other expenses.

    (4) She still owed husband a balance of $109,050.75 on the equalization payment.

¶ 7     During the contempt hearing, wife did not claim that she was unaware of the magistrate's order requiring her to make the

equalization payment to husband, and she did not dispute the order's validity. Instead, she asserted that she did not have the present ability to pay all the rest of the equalization payment.

¶ 8      The magistrate made the following factual findings about wife's financial status at the time of the contempt hearing. She had $7,039.32 in an investment account. She had purchased a horse trailer with $50,000 from her business, and she used the trailer as collateral for a $40,000 loan. She used part of the loan to pay personal and business expenses, and $20,000 of the loan was still in her bank account. She had $7,000 in her business bank account. And she had received about $2,000 from rental properties.

¶ 9      The magistrate noted that wife's credibility was "mixed" and that "[h]er failure to demonstrate why she could not pay [husband] more in 2021 and 2022 suggested that she was not being candid about her ability to pay now." The magistrate also observed that she had not provided him with complete bank statements.

¶ 10      Based on the evidence presented at the hearing, the magistrate determined that wife could "make a partial payment [to husband] with her savings and cash in her personal account"

because she had "the present ability to pay at least $25,000 to [husband]." She had violated the final order because she had not made the full equalization payment to husband, and, as a result, she was "guilty of contempt and subject to remedial sanctions." As part of the remedial sanctions, the magistrate ordered wife to pay husband reasonable attorney fees and costs in association with the contempt motion and hearing, adding that wife could purge herself of contempt by paying at least $25,000 to husband.

¶ 11    The district court adopted the magistrate's contempt findings and sanction on C.R.M. 7(a) review.

## II.    Compliance with C.A.R.

¶ 12    In her reply brief, wife asks us to strike husband's answer brief because it does not comply with C.A.R. 28(a)(5), 28(b), and 28(e). While we agree that the answer brief does not fully comply with the appellate rules, we were able to understand husband's contentions in the context of the record. We therefore deny wife's request. *See Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1186 (Colo. App. 2011)(addressing the merits of the arguments even though the parties' briefs failed to comply with C.A.R. 28 and 32); *Barr Lake Vill. Metro. Dist. v. Colo. Water Quality*

4

*Control Comm'n*, 835 P.2d 613, 615 (Colo. App. 1992)(declining to dismiss an appeal for failure to comply with C.A.R. 28).

### III.    Remedial Contempt Sanctions

¶ 13    Wife challenges the magistrate's decision to hold her in contempt of court. Her challenge focuses on the magistrate's finding that she had the financial ability to pay $25,000 at the time of the contempt hearing instead of the full amount of the remainder of the equalization payment, or approximately $109,000. She submits that, before the magistrate could find her in contempt, the magistrate would have to find that she had the ability to pay all the remainder of the equalization payment, not just part of it. So, she finishes up, the magistrate's finding that she only had the partial ability to comply with the original order could not form the basis for a contempt finding. We disagree.

### A.    Standard of Review and Generally Applicable Law

¶ 14    "A district court reviewing a magistrate's decision under C.R.M. 7(a) may not alter the magistrate's factual findings unless they are clearly erroneous." *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22 (citing C.R.M. 7(a)(9)). "A court's factual findings are

5

clearly erroneous only if there is no support for them in the record."

*Id.* (quoting *Van Gundy v. Van Gundy,* 2012 COA 194, ¶ 12).

¶ 15   Appellate review of a district court's order adopting a magistrate's decision is a second layer of appellate review. *In re Marriage of Thorburn,* 2022 COA 80, ¶ 25. Like the district court, the appellate courts must accept a magistrate's factual findings unless they are clearly erroneous. *Sheehan,* ¶ 22. We review any issues of law de novo. *Id.*

¶ 16   A court has the discretion to find a party in contempt, and we will not reverse that decision unless the court abuses its discretion reaching it. *Id.* at ¶ 23. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *In re Marriage of Bergeson-Flanders,* 2022 COA 18, ¶ 10.

¶ 17   One basis for a court's contempt finding is when a party has not complied with a lawful court order that the party knew about. *See Sheehan,* ¶ 24 (citing *In re Marriage of Cyr,* 186 P.3d 88, 91 (Colo. App. 2008)); C.R.C.P. 107(a)(1)(defining "contempt" as "disobedience or resistance by any person to or interference with any lawful . . . order of the court"). Once those two factors have

been established, the burden shifts to the party to show that he or she was unable to comply with the order. *Sheehan*, ¶ 24.

¶ 18    There are two types of contempt sanctions: punitive and remedial. *Cyr*, 186 P.3d at 91. A court uses punitive sanctions, which are criminal in nature, to punish a party, and they require a showing of willful disobedience on the part of the contemnor. *Id.* at 91-92. The magistrate in this case did not impose a punitive sanction.

¶ 19    Rather, the magistrate imposed a remedial sanction. "[R]emedial sanctions are civil in nature and are intended 'to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform.'" *Id.* at 92 (citation omitted). The purpose of remedial sanctions is for the benefit of another. *See id.* When the court orders a remedial contempt sanction, it must specify the means by which the contemnor can purge the contempt. *See id.*

¶ 20    To order a remedial sanction, the court must make "two findings of present duty and ability to pay: one which supports the contempt finding, and a second which justifies the imposition of a

remedial order." *In re Marriage of Hartt,* 603 P.2d 970, 972 (Colo. App. 1979).

## B. Analysis

¶ 21    On appeal, wife does not dispute that the magistrate's equalization payment order was lawful or that she had knowledge of it, and she does not challenge the magistrate's factual finding that she had the present ability to pay husband at least $25,000. After reviewing the record, we conclude that it supports the magistrate's findings concerning wife's present ability to pay. *See Sheehan,* ¶ 22 (explaining that appellate courts will not overturn a lower court's factual findings unless they lack record support).

¶ 22    But, as we indicated above, wife contends that, before the magistrate could hold her in contempt, the magistrate had to find that she had the present ability to pay the entire unsatisfied part of the equalization payment. We disagree.

¶ 23    There is no language in C.R.C.P. 107 requiring a court to find that a party has the present ability to pay the *full amount* of a court ordered payment before the court can then find a party in contempt because it has not paid part or all of that amount. C.R.C.P. 107(a)(1) only defines "contempt" as "disobedience or resistance by

8

any person to or interference with any lawful . . . order of the court." C.R.C.P. 107(d)(2) requires that, when remedial sanctions are considered, a court must hold a hearing to consider evidence, and then it may find the person in contempt and order sanctions, describing "the means by which the person may purge the contempt."

¶ 24    A remedial sanction for contempt is a "sanction[] imposed to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform." C.R.C.P. 107(a)(5). The court must find that the party has the present ability to comply with the court order, and therefore purge the contempt, so that "the [party] holds in [his or her] hand[s] the proverbial keys to the jailhouse door — once [he or she] purges the contempt, [he or she] is free." *In re Parental Responsibilities Concerning A.C.B.*, 2022 COA 3, ¶ 24.

¶ 25    In this case, the magistrate held a hearing and found that wife had the ability to comply with its final order by paying husband at least $25,000 towards the equalization payment; yet, she had not done so. As a result, the magistrate found wife in contempt of its final order, specifying that she could purge herself of contempt by

9

paying husband the remedial sanction of $25,000, which the magistrate found was within her present ability to pay. By ordering wife to pay husband an amount within her present ability, the magistrate gave wife "the proverbial keys to the jailhouse door," or the means by which she could purge herself of contempt. *A.C.B.*, ¶ 24.

¶ 26     We are not otherwise persuaded by wife's reliance on *People in Interest of Murley*, 239 P.2d 706 (Colo. 1951). Wife relies on the following passage from that case:

> The court failed also to make any finding as to the father's then ability to make payment of the amount in arrears which he was ordered to pay instanter, while the evidence discloses without contradiction that he was then unable to make immediate payment of the full amount. Accordingly, the court's order is without findings or supporting evidence necessary for an order to enforce performance of an act in the power of the respondent to perform, as well as without findings necessary for an order to vindicate the dignity of the court.

*Id.* at 709. Wife asserts that this passage stands for the proposition that "the Colorado Supreme Court held the alleged contemnor must be found to have the ability to make 'immediate payment of the full amount.'"

¶ 27    There are four problems with wife's assertion.

¶ 28    First, there is no indication in this passage that the supreme court was holding that, in a remedial contempt situation, (1) a party cannot be held in contempt *unless* he or she has the present ability to pay the *entire* amount of an unpaid obligation; and (2) a trial court cannot issue a remedial sanction requiring the party to pay less than the entire amount of the obligation. There is no citation to authority in the supreme court's opinion in support of such propositions, such as a statute, a court rule, a case from Colorado or any other jurisdiction, a law review article, or a legal treatise.

¶ 29    Second, neither the supreme court nor this court has, in any other case, taken the position that wife claims is represented by the passage from *Murley*. Contrary to wife's implication, the question of whether a court could impose a remedial sanction of less than the entire amount owed was not addressed in cases such as *In re Marriage of Cyr*.

¶ 30    Third, when read in the context of the entire *Murley* opinion, it appears that the supreme court was not making a sweeping pronouncement about the requirements of remedial contempt findings. Instead, it was merely making a comment concerning the

11

facts of the case: the trial court had not made *any* findings about the father's ability to pay the arrears even though the record showed that he was unable to pay the full amount of the arrears. 239 P.2d at 709. The supreme court did not address what might have happened had the trial court found that the father had been presently able to pay *some* of the arrears.

¶ 31    Fourth, even assuming, for the purposes of argument, that this passage referred to the sort of rule that wife attaches to it, the passage is dicta. *See Hardesty v. Pino*, 222 P.3d 336, 340 (Colo. App. 2009)(explaining that only the holding and its necessary rationale are the law of the case and not dicta). In *Murley*, the supreme court's holding reversing the trial court was based on its conclusion that the trial court lacked jurisdiction over the proceedings; it was not based on any insufficiency of the trial court's contempt order. 239 P.2d at 710. The passage in question was merely an aside.

¶ 32    We therefore conclude that there is no authority in Colorado that requires a court to find that a party has the present ability to pay the full amount owed before determining, in its discretion, that a party is in contempt. It is sufficient if the court finds that the

party has the ability to comply partially with the lawful order, as long as the court imposes a remedial payment sanction that is within the party's present ability to pay. *See In re Estate of Elliott*, 993 P.2d 474, 479 (Colo. 2000)("[W]hen remedial sanctions are imposed, the [trial] court must make findings of fact regarding . . . the present duty and ability to perform the acts required to purge oneself of contempt."); *Sheehan*, ¶ 24; C.R.C.P. 107(a)(1), (5), (d)(2).

¶ 33    In this case, the magistrate found that wife had the present ability to comply with the final order by making a partial payment to husband, and, since she had not done so, the magistrate found her in contempt. The magistrate then ruled that wife could purge herself of her contempt by paying husband at least $25,000, an amount that was within wife's present ability to pay. The magistrate's findings therefore satisfy the required findings necessary to order a remedial contempt sanction. *See Hartt*, 603 P.2d at 972.

¶ 34    We therefore conclude that the magistrate did not abuse his discretion because his contempt order was not manifestly arbitrary, unreasonable, or unfair, and because it did not misapply the law. *See In re Marriage of Bergeson-Flanders*, ¶ 10. Because the

magistrate did not abuse his discretion, the district court did not err when it adopted the magistrate's findings and order.

¶ 35    The district court's order is affirmed.

JUDGE WELLING and JUSTICE MARTINEZ concur.