## No. 28004

**The Board of Water Works of Pueblo, Colorado v. Pueblo Water Works Employees Local 1045, American Federation of State, County and Municipal Employees, AFL-CIO, et al.**

(586 P.2d 18)

Decided September 25, 1978. Opinion supplemented and as supplemented rehearing denied November 13, 1978.

Petersen & Fonda, P.C., William F. Mattoon, for plaintiff-appellee.

Jenkins, O'Rourke & Sandstrom, P.C., Gene L. Breitenbach, for defendants-appellants.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is a consolidated appeal from two decisions, finding appellants, Local 1045 of the American Federation of State, County and Municipal Employees (Local 1045) and its striking members, in contempt of (1) a

temporary restraining order and (2) a preliminary injunction. The first order was issued by the Honorable Jack F. Seavy and the second by the Honorable Thomas Phelps, judges of the District Court of Pueblo County. We affirm.

On February 16, 1977, the appellant employees struck the Pueblo Board of Water Works (Board), the appellee. The following day the Board filed a petition for a temporary restraining order (TRO), preliminary injuction and permanent injuction.

A hearing on the application for a TRO was held by Judge Seavy on February 17, 1977, at which all parties were represented by counsel. Evidence produced at the hearing established the following situation. Prior to the strike, the Pueblo water department employed 129 persons to operate its system. When the strike occurred, a skeleton crew of thirteen supervisory and office personnel, most of whom had had little significant field experience, assumed responsibility for its operation. There was testimony that it would be most difficult for the skeleton crew to handle any atypical occurrence or emergency, such as a major fire.

The testimony also emphasized the hazards to the public health which might result from the strike and the inexperience and inability of the supervisory personnel to cope with the myriad of problems in the day-to-day operations.

After the hearing, the following order was entered:

"1. That the defendants are hereby restrained and enjoined from striking or engaging in a work stoppage at The Board of Water Works of Pueblo, Colorado.

"2. Defendants are further enjoined from engaging in any activity either individually or in concert with others, including picketing, that interferes with the normal operation and functions of The Board of Water Works of Pueblo, Colorado.

"3. Defendants are not enjoined from engaging in informational picketing that does not interfere with the normal operation and functions of The Board of Water Works of Pueblo, Colorado.

"4. The defendant union, its business agent or representative, Gary Anderson, and its officers, agents, and employees, and directors, are enjoined from ordering, notifying, requesting or encouraging any employee of the plaintiff to engage in any conduct, including picketing, that interferes with the normal operation of The Board of Water Works of Pueblo, Colorado, or from engaging in any activity preventing or impeding other employees of the plaintiff from working or carrying out their assigned and authorized activities at The Board of Water Works of Pueblo, Colorado."

The same evening the order was entered, the striking members of Local 1045 held a meeting; and after being advised by their attorneys and union representative, Gary Anderson, of the consequences of violating the TRO, they voted 88 to 8, according to the minutes of the meeting, to

continue the strike. The following morning, the strikers held a rally and marched on the courthouse where they met with the sheriff and the press. Anderson at that time told the sheriff and the press that the union had voted not to abide by the temporary restraining order and that the employees had voted to continue the strike regardless of the consequences, even including going to jail.

The testimony at the contempt hearing included pictures and identification of the picketing strikers and local television video tapes and radio tapes of the march on the courthouse, including the statement of Gary Anderson. On the basis of this evidence, Judge Seavy found that the individual defendants had continued to engage in a work stoppage; that Local 1045 and Gary Anderson, as the union's authorized representative, "actively aided, abetted and encouraged" the individual defendants to continue the work stoppage in disobedience of the court's temporary restraining order. Judge Seavy found these acts constituted contempt of court.

The individual strikers were each fined $250, $100 to be suspended if they returned to work on March 14. The union was fined $2,500, with $1,000 to be suspended if the strike ceased. Gary Anderson was sentenced to 60 days in jail, 50 days of which were to be suspended if the strike ceased as of March 14.[1] Judge Seavy dismissed contempt citations as to nine defendants whom the Board had stipulated were on sick leave, funeral leave or otherwise in a situation where their ability to comply with the order was in doubt.

On March 8, 1977, the day before the contempt hearing, there had been a hearing before Judge Phelps[2] on the Board's petition for a preliminary injunction. The evidence presented was substantially the same as that introduced at the earlier hearing on the TRO. In addition, the evidence showed that work on the twelve million dollar north side water treatment plant was suspended because employees of the contractor and subcontractor would not cross the appellants' picket lines. The plant was vital to the increased water demands of the citizens of Pueblo which occur in April through September and which could not be fulfilled by the appellee's other facility. In addition, there was testimony that some of the city's fire hydrants had been out of service since the beginning of the strike, that violence had been threatened but had not occurred.

At the conclusion of the hearing, Judge Phelps explicitly commented on the testimony and gave his reasons for the order granting the preliminary injunction. He then adopted Judge Seavy's earlier order.

---

[1] Defendants sought a writ of prohibition and stay of execution of this order with this court. We denied the writ but granted a stay of execution contingent on a timely notice of appeal. The appeal was later transferred to the court of appeals. However, after the preliminary injunction, the cases were consolidated and transferred to this court.

[2] Judge Seavy was trying a murder case.

On Monday, March 14, the return-to-work deadline contained in Judge Seavy's contempt order passed without any strikers returning. The Board filed motions to cite the individual strikers for contempt of the preliminary injunction, and a hearing was held on March 24. After hearing testimony, Judge Phelps held that Gary Anderson was not guilty of contempt of the preliminary injunction. The court also held that the strikers who had been personally served had "willfully and contemptuously" violated the order granting the preliminary injunction. These persons were fined $600 each, $300 to be remitted if they returned to work on March 28. Local 1045 was fined $10,000 for its contempt.

In the broadest sense, this case does not involve the right of public employees to strike. The real question raised on appeal is whether public employees can willfully disregard the injunctive orders of our courts.

## I. COMPLIANCE WITH C.R.C.P. 65(b) AND (d)

The appellants timely filed motions for new trial directed to the contempt orders which were issued because of the violations of the temporary restraining order and the preliminary injunction. The basis of the motion for new trial directed to the TRO was essentially an attack for its failure to comply with C.R.C.P. 65(b) and (d). The second motion for new trial attacked the preliminary injunction and the contempt order issued thereon on the basis of failure to comply with C.R.C.P. 65(d). These were essentially attacks on the merits of the TRO and the preliminary injunction. The motions were denied.

■ Although both the TRO and the preliminary injunction were appealable orders, no appeals were taken therefrom. C.A.R. 1 (a)(3). Thus, we do not reach appellants' arguments on their merits. *Minshall v. Pettitt,* 151 Colo. 501, 379 P.2d 394 (1963), and cases cited therein; C.R.C.P. 59(f). A collateral attack on the TRO or the preliminary injunction contained in a motion for new trial directed to the contempt orders would be proper only if the orders granting the TRO or the preliminary injunction were void for some jurisdictional defect. *See Renner v. Williams,* 140 Colo. 432, 344 P.2d 966 (1959); *see also Bethlehem Mines Corp. v. United Mine Workers of America,* 476 F.2d 860 (3rd Cir. 1973). Neither order has been attacked on these grounds. Therefore, we need only decide whether the contempt order was proper.

## II. THE CONTEMPT ORDER

### A. *Sufficiency of the Evidence*

■ The appellants contend that the trial court abused its discretion in finding Local 1045 guilty of contempt in that there was insufficient evidence to support the finding. We do not agree with appellants' argument.

The record is replete with testimony of pickets carrying placards and signs posted near the various waterworks stations with the legend "Local 1045 on Strike." We hold that there was ample evidence to warrant the contempt citiation and that, therefore, there was no abuse of discretion.

The appellants contend that the fines levied by the trial court were unreasonable and an abuse of discretion. Again, we do not agree.

C.R.C.P. 107(d) permits the levy of a fine or imprisonment for contempt of court. When the court levies such a fine, it must make findings of fact that the parties' conduct constituted misbehavior, which offended the court's authority and dignity. *Murley v. Murley,* 124 Colo. 581, 239 P.2d 706 (1951). The trial court here found that the appellants' actions were willful and contemptuous, that they had "promiscuously violated" the court's order and in so doing "impugned the dignity of the court." There was sufficient evidence to support this conclusion.

The trial court was concerned with the nature and willfulness of the violation of the court's order relating to the work stoppage and the dangers inherent in it. Under the circumstances, we cannot say that the punishment imposed was so excessive or incommensurate with the gravity of the offense as to be arbitrary or vindictive. *Murley, supra; see also Brown v. Brown,* 183 Colo. 356, 516 P.2d 1129 (1973).

The judgments are affirmed.

## ON PETITION FOR REHEARING

On petition for rehearing, the court supplements its opinion as follows:

In their petition for rehearing the defendants direct our attention to two matters which we either failed to consider in our opinion or which we did not discuss in depth sufficient to explain our holding.

The first challenge relates to the sentence that was imposed on Gary Anderson, the union's authorized representative, by Judge Seavy for violation of the TRO. The sentence was for 60 days in jail, 50 days of which were suspended if the strike ceased as of March 14. The petition for rehearing points out that

"[T]he appellee admitted at oral argument that Mr. Anderson's jail sentence violated 107(d) C.R.C.P.; that only ten (10) days of that sentence complied with the rule."

The concession was made by the appellee on the basis that Anderson had violated paragraph 4 of the TRO and that the ten-day sentence was properly imposed to vindicate the dignity of the court, but that Anderson had no power to cause the strike to cease as of March 14. Mr. Mattoon, attorney for the appellee, in response to a question from the court, phrased it in this fashion:

"I think Gary owes them 10 days; I think [as to] the 50 days he did not have the key to his own cell and he should be excused from it."

Therefore, we hold the contingent sentence of fifty days is invalid.

■ As their second point, the appellants allege:

"2. There was a failure to serve approximately fifty of the employees with citation of contempt together with a copy of the motion and affidavit, in violation of Rule 107(c) C.R.C.P. . . .

"3. The procedure of serving an attorney with a copy of the citation of contempt violated the due process rights of the employees not served. . . . Service was had on their attorney. . . ."

We did not answer this argument in our opinion because of the overwhelming evidence in the record that all of the idividual defendants were fully aware of the court's order and of the potential penalties for its violation. We noted that they were represented by counsel. We, perhaps, should have noted that at onset of the proceedings the following document, labeled "Acceptance of Service," was filed by counsel for the appellants:

"I, GENE BREITENBACK, of Jenkins, Sandstrom and O'Rourke, being first duly sworn, upon oath, depose and say:

"1. That we are the attorneys for Pueblo Water Works Employees Local 1045 and all Defendants above named.

"2. That I have received a true copy of the Summons together with a true copy of the Complaint for Temporary Restraining Order; Preliminary Injunction and Permanent Injunction and the Affidavit in the above entitled case, and that I accept service of the same.

"Dated Feb. 17, 1977 [at] 9:00 AM."

It is also worthy of mention that the same counsel filed an answer to the complaint which opens with this statement:

"COME NOW the defendants in the above entitled action by and through their attorneys . . . and by way of answer to the complaint filed herein, state:

"1. Admit the allegations contained in paragraphs I through X."

Paragraph VIII of the Complaint alleges that "those defendants who are individually named in the above caption (except Gary C. Anderson) are members of the Defendant Local 1045."

No issue was raised as to the sufficiency of service upon any individual defendant by way of special appearance. After the entry of the general appearance by counsel, the union meeting at which 96 of the members present were advised of the issuance of the temporary restraining order, the mass march to the sheriff's office and the attendant publicity, it is inconceivable that any one of the defendants who were found in contempt could have acted in ignorance of the court's order. No allegation of lack of knowledge of the order is contained in the motions for new trial or the petition for rehearing. The position of the appellants is that "it is a violation of due process on its face and also on the particular facts of this case."

C.R.C.P. 107(c), upon which appellees rely, provides for service of a copy of the motion and affidavit for contempt upon the person alleged to

have committed the contempt. C.R.C.P. 5(b), which must be read in conjunction with Rule 107(c), provides that:

"Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party himself is ordered by the court. . . ."

The attorney for appellees acknowledges that he has represented the parties throughout the proceedings, claiming only that in contempt proceedings personal service is mandatory. The rule does not say so, and neither judge ordered personal service. The proceeding for civil contempt is a continuance of the injunctive proceeding, hence it was correctly instituted by motion served upon the counsel appearing for the appellees. *S.E.C. v. Naftalin,* 460 F.2d 471 (8th Cir. 1972); *Watkins v. Rives,* 125 F.2d 33 (D.C. Cir. 1941); *National Labor Relations Bd. v. Hopwood Retinning Co.,* 104 F.2d 302 (2d Cir. 1939); *Republic Electric Co. v. General Electric Co.,* 30 F.2d 99 (3d Cir. 1929).

We find no merit in the other assignments of error and elect not to discuss them.

We adhere to our original opinion except as to the adjustment in the sentence of Gary Anderson, which is limited to ten days.