SECURITIES INVESTOR PROTECTION
CORP., Plaintiff–Appellee,

v.

FIRST ENTERTAINMENT HOLDING
CORP., Appellant.

00CA1475.

Colorado Court of Appeals,
Div. I.

Aug. 30, 2001.

Rehearing Denied Oct. 4, 2001.

William D. Scheid, Dan E. Miller, P.C., Dan E. Miller, Denver, CO, for Plaintiff–Appellee.

Patton Boggs LLP, Francis B. Barron, Cole A. Wist, Teresa A. Thomson, Denver, CO, for Appellant.

Opinion by Judge DAVIDSON.

In this C.R.C.P. 69(g) proceeding, First Entertainment Holding Corp. (FEHC) appeals from the contempt order entered by the trial court pursuant to C.R.C.P. 107. We affirm.

In August 1999, plaintiff, Securities Investor Protection Corp. (SIPC) brought an action to enforce an outstanding judgment against Abraham B. Goldberg (Goldberg), a director of FEHC. As part of that action, SIPC filed a C.R.C.P. 69(g) motion to obtain funds allegedly owned by Goldberg but held by FEHC.

Earlier in 1999, FEHC had granted Goldberg several options to purchase a total of 2,250,000 shares of FEHC common stock, at varying prices. FEHC's corporate minutes reflected that, in March 1999, Goldberg was granted 500,000 shares of FEHC common stock at $0.21 per share, an option exercisable immediately for up to three years; an option to purchase 500,000 shares at $0.21 per share contingent upon completion of two business transactions; and an option to purchase 500,000 shares at $0.53 per share. In May 1999, Goldberg was given an option to purchase 750,000 shares of FEHC common stock at $1.34 per share, in increments of 250,000 shares, exercisable immediately and in January 2001 and 2002, contingent upon his continuing to act as director. FEHC filed a statement regarding all of these options with the SEC.

In June, Goldberg exercised a portion of the first option to buy 500,000 shares at $0.21 per share, purchasing 100,000 shares.

In September, FEHC's board voted to cancel the option for 500,000 shares at $0.53 per share, and to cancel half of the options for 1,000,000 total shares at $0.21 per share. The corporate minutes reflect that Goldberg disputed the board's right to cancel options previously issued to him, and that he did not intend to relinquish those options. However, even after the disputed cancellations and his exercise of part of his option, Goldberg still held an undisputed option to purchase 400,-000 shares at $0.21 per share.

Also in September, the court ordered FEHC to turn over "any and all evidence, wherever located, of the right of the Judgment Debtor to exercise an option or options to acquire up to 750,000 shares, or any other amount of the shares, of the common stock of [FEHC], upon an exercise price of $0.21 per share or other exercise price."

FEHC's response stated, "There is no property of the judgment debtor which is subject to the Turnover Order." Also, FEHC asserted that it did not have in its possession or control the evidence requested, except for corporate minutes of the board meetings, which it attached to its response. Finally, FEHC stated, "While the Judgment Debtor may claim the right to certain shares of FEHC common stock and options to purchase shares of FEHC common stock, FEHC disputes this claim."

In October 1999, without informing SIPC or the court, FEHC canceled Goldberg's remaining options to purchase 400,000 shares at $.21 per share

In January 2000, on SIPC's motion, the court issued a second order that acknowledged, *inter alia*, the existence of a dispute over certain shares, but nevertheless ordered FEHC to turn over any securities it held in Goldberg's name. The court also issued a contempt citation against FEHC pursuant to C.R.C.P. 69(g) and 107.

In June 2000, shortly before the contempt hearing, Goldberg resigned as a director of FEHC.

After the hearing, the court found FEHC in contempt for failing to comply with the court's orders. The court also ruled that FEHC could purge the contempt by filing a letter acknowledging the existence of Goldberg's uncertificated security interest in the form of an option to purchase 400,000 shares at $0.21 per share.

FEHC filed a letter purporting to comply with this order. In July 2000, however, the court ordered FEHC to resubmit the letter, so that it consisted solely of the first sentence of the previous letter, which read: "In accordance with your order on July 5, 2000, in the above-captioned case, this letter is to acknowledge that, as evidenced by the draft of the minutes of the Board of Directors of [FEHC], which was provided to the Court on September 28, 1999 by [FEHC], [FEHC's] records indicated that [Goldberg] was, on September 28, 1999, entitled to an uncertificated option to purchase up to 400,000 shares of [FEHC] restricted common stock at an exercise price of $[0].21 per share until March 11, 2002." The remainder of the letter, characterized by the court as argumentative, was ordered stricken. FEHC then brought this appeal of the contempt order.

I.

■ As a threshold matter, we reject SIPC's argument that the contempt order

was not a final order as required under C.A.R. 4(a) and that therefore the appeal should be dismissed.

In its motion that FEHC be held in contempt for failing to comply with the court's orders, SIPC had requested remedial sanctions, including monetary damages for alleged conversion of the option for 400,000 shares at $0.21 per share. Specifically, SIPC had requested that the court require FEHC to deposit $400,000 with the clerk for delivery to SIPC, or to deposit a sufficient number of FEHC common shares saleable on the open market as would produce $400,000. The court imposed a sanction, but made no ruling as to the requested conversion damages. That order was final.

For purposes of appeal, an order "deciding the issue of contempt and sanctions" is a final order. C.R.C.P. 107(f). Thus, by its plain language, the rule requires that, to constitute a final order, the determination of sanctions must be completed. *Cf. Axtell v. Park School District R–3*, 962 P.2d 319 (Colo.App.1998)(award granting attorney fees, but not determining the amount, is not a final judgment).

Here, as a remedial sanction, the trial court ordered that FEHC file the letter acknowledging Goldberg's option interest. The court ruled that "I think the thing to do is to order immediate compliance. [I] think that's what the Court order had done and was not done, and can be done by [FEHC]." SIPC argues, however, that because the trial court made no further determination as to the monetary damages requested for the alleged conversion of the option to purchase, the contempt order was not final and this appeal is premature. We disagree.

Before its amendment in 1995, C.R.C.P. 107(d) allowed damages to be awarded as a sanction for remedial contempt: "A fine may be imposed not exceeding the damages suffered by the contempt, plus costs of the contempt proceeding, plus reasonable attorney's fees in connection with the contempt proceeding, payable to the person damaged thereby." *Compare Shapiro v. Shapiro*, 115 Colo. 501, 175 P.2d 387 (1946)(damages as a sanction for remedial contempt), *with Brown v. Brown*, 183 Colo. 356, 516 P.2d 1129

(1973)(fine imposed for punitive contempt to vindicate the dignity of the court is payable to the court registry, not to the parties).

However, under the current version of the rule, although a punitive contempt sanction still includes a fine payable to the court, a remedial sanction is limited to that which is "imposed to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform." C.R.C.P. 107(a)(4), (5). A remedial contempt order, then, only describes the means by which the contempt can be purged and the sanctions that will be in effect until the contempt is purged. C.R.C.P. 107(a)(2).

Thus, other than costs and reasonable attorney fees, *see* C.R.C.P. 107(d)(2), a trial court is without authority to require, as a remedial sanction, monetary payments, such as the damages award SIPC requested here, that do not force compliance with or performance of a court order. Further, we do not infer from the court's order that it intended to impose any additional sanctions. To the contrary, the court properly limited the sanction imposed on FEHC to that which directed the specific performance of the court's turnover orders. Accordingly, the determination of sanctions was complete, and the contempt order was final for the purposes of appeal.

## II.

FEHC contends that, because the ownership of the options was disputed, the court did not have the authority to proceed under C.R.C.P. 69. We disagree.

In pertinent part, C.R.C.P. 69(g) provides that:

> The court . . . may order any party or other person over whom the court has jurisdiction, to apply any property other than real property, not exempt from execution, whether in the possession of such party or other person, or owed the judgment debtor, towards satisfaction of the judgment. Any party or person who disobeys an order made under the provisions of this Rule may be punished for contempt.

■ When there is an actual dispute as to ownership of property, the court may not try such an issue in a C.R.C.P. 69 proceeding, because the purpose of a C.R.C.P. 69 proceeding is to discover what property the judgment debtor has that is subject to execution, not to try contested title as to such property. *See Walker v. Staley,* 89 Colo. 292, 1 P.2d 924 (1931); *Equisearch, Inc. v. Lopez,* 722 P.2d 426 (Colo.App.1986)(C.R.C.P. 69 proceeding may not be used to resolve disputed ownership).

■ Here, both the minutes submitted by FEHC in its response to the September order and the SEC registration statements submitted with SIPC's motion for contempt indicated that, as of September 1999, Goldberg had an undisputed option to purchase 400,000 shares at $0.21 per share. Conversely, both sets of documents reflected that Goldberg disagreed with the board's decision to cancel the options for 500,000 shares at $0.53 each and to reduce by half the option for 1,000,000 shares at $0.21 per share.

Goldberg's disagreement concerned his canceled option to purchase 500,000 shares at $0.53 per share, as well as his option to purchase 500,000 shares at $0.21 per share that was, in effect, canceled by the one-half reduction in the option to purchase 1,000,000 shares at $0.21 per share. However, his disagreement did not concern his ownership of options to purchase 500,000 shares at $0.21 per share, which numbered 400,000 after he exercised his option to 100,000 shares. The corporate minutes plainly indicate that neither Goldberg nor FEHC disputed Goldberg's option to purchase the 400,000 shares at $0.21 per share that is at issue here.

Thus, although we agree with FEHC that ordinarily, under C.R.C.P. 69, an ownership dispute effectively ends the trial court's ability to proceed, here, both disputed and undisputed securities were at issue. The court's January order did not decide any alleged dispute. Rather, based on the documents submitted by FEHC, the court properly acknowledged that ownership of some of the securities to be turned over appeared to be disputed, and ordered the remaining undisputed securities to be turned over immediately, pursuant to the September order.

## III.

■ FEHC also contends that the trial court erred in finding it in contempt of court. Again, we disagree.

■ The court may hold a party in contempt for disobeying a lawful order. C.R.C.P. 69(g), 107. We will overturn a finding of contempt only if the trial court abused its discretion. *See MCI Constructors, Inc. v. District Court,* 799 P.2d 40 (Colo.1990). If the record supports the trial court's findings, they are binding on appeal. *Linley v. Hanson,* 173 Colo. 239, 477 P.2d 453 (1970).

Here, the court specifically ordered FEHC to turn over to the clerk of court any and all evidence of securities owned by Goldberg but in the control of FEHC. In response, FEHC attached corporate minutes that addressed, *inter alia,* the status of Goldberg's ownership of shares and options, some of which were disputed and some of which were not. The court then clarified that, although a dispute existed, any undisputed securities issued in Goldberg's name must be deposited with the clerk of court.

Although FEHC partially complied with the orders by submitting corporate minutes, FEHC was required to deposit with the court not merely evidence of the creation and existence of the undisputed options, but also was required to deliver to the clerk the uncertificated options themselves.

FEHC argues, however, that its submission of corporate minutes was adequate compliance. Specifically, FEHC argues, because the options were uncertificated, there was no certificate or paper that could be turned over, and the corporate minutes were the only evidence of these options. We disagree.

As a threshold matter, we note that, although FEHC is incorporated in Nevada, the Nevada Uniform Commercial Code, as pertinent here, is identical to the Colorado Uniform Commercial Code (UCC). *See* § 4–8–110, C.R.S.2000 (requiring law of state of incorporation to apply under Colorado choice

of law provisions concerning property and securities).

Under the UCC, a security may be represented by a security certificate, *see* § 4–8–102(a)(16), C.R.S.2000; Nev.Rev.Stat. § 104.8102(*o*)(1) (2000), or it may be uncertificated, meaning it is not represented by a certificate. *See* § 4–8–102(a)(18), C.R.S. 2000; Nev.Rev.Stat. § 104.8102(r) (2000). A stock option is considered an uncertificated security. *See* § 4–8–102(a)(15), C.R.S.2000; Nev.Rev.Stat. § 104.8102(*o*) (2000).

Delivery of a certificated security is effected when another acquires possession of the certificate itself. *See* § 4–8–301(a), C.R.S.2000; Nev.Rev.Stat. § 104.8301(1) (2000). However, delivery of an uncertificated security occurs when the issuer registers the purchaser as the registered owner, *see* § 4–8–301(b)(1), C.R.S.2000; Nev.Rev.Stat. § 104.8301(2) (2000), or when a person other than a securities intermediary either becomes the registered owner of the uncertificated security on behalf of the purchaser or, having previously become the registered owner, acknowledges that it holds it for the purchaser. *See* § 4–8–301(b)(2) cmt. 3, C.R.S.2000 (although use of the term "delivery" in conjunction with uncertificated securities seems solecistic, it is routinely used in the securities business); Nev.Rev.Stat. § 104.8301(2)(b) (2000).

Thus, whereas deposit of a certificated security with a clerk of court would be effected by delivery of the certificate, deposit of an uncertificated security, as here, requires not only evidence of the security's creation and existence, but also formal acknowledgment of its control by the clerk of court.

Indeed, SIPC's expert testified that, here, to deposit Goldberg's options with the court effectively, FEHC, as an issuer of securities, was required under the UCC to make an entry in its books showing the transfer of the options to SIPC or to the court, and submit to the clerk of court an acknowledgment that such a transfer had occurred. However, as of the date of the hearing, FEHC had made no such entry in its books, nor had it submitted such an acknowledgment. Moreover, the evidence at the hearing showed that FEHC was neither unaware that this was required nor unable to do so. Accordingly, the trial court's finding that FEHC was in contempt for failing to turn over property in its control belonging to Goldberg was legally correct and amply supported by the record.

The order is affirmed.

Judge METZGER and Judge ROY concur.