In the Matter of Donald M. LOPEZ, a protected person.

Roger Lopez, Petitioner–Appellee,

v.

Victor Montoya and Lynn Smith, Respondents–Appellants.

No. 03CA0824.

Colorado Court of Appeals, Div. V.

Oct. 7, 2004.

Certiorari Denied April 11, 2005.

Marvin Dansky, P.C., Marvin Dansky, Westminster, Colorado, for Petitioner–Appellee.

James D. Robinson, County Attorney, Hal B. Warren, Deputy County Attorney, Brighton, Colorado, for Respondents–Appellants.

RUSSEL, J.

Victor Montoya and Lynn Smith appeal the trial court's order holding them in contempt of court and imposing sanctions, including attorney fees. We affirm the order of contempt and vacate the award of attorney fees.

## I.  Background

In 2002, Roger Lopez filed a petition in the trial court seeking to become the guardian and conservator of his father, Donald M. Lopez. Pursuant to § 15–14–305, C.R.S. 2003, the court registrar appointed a visitor to investigate and report on the need for a guardian or conservator.

Smith was Donald Lopez's caseworker at the Adams County Department of Social Services. Montoya was Smith's supervisor. Both were informed, at their request, that the registrar had appointed a visitor as part of the guardianship proceedings.

Nevertheless, Montoya and Smith, in concert with Donald Lopez's relatives in California, acted to frustrate the guardianship proceedings. With Montoya's knowledge, Smith removed Donald Lopez from an assisted living center, drove him to the airport, and left him in the care of a person who took him to California.

When Roger Lopez discovered that his father had been removed from Colorado, he asked the court to hold Montoya and Smith in contempt. The court issued contempt citations in January 2003.

In February 2003, following an evidentiary hearing, the court found Montoya and Smith in contempt of court. The court sentenced them to six months in jail, suspended on the following conditions: (1) they must avoid engaging in similar conduct; (2) they must undergo remedial training; (3) they must report on the events leading to the removal of Donald Lopez; and (4) they must pay Roger Lopez's costs and attorney fees.

Montoya and Smith now appeal.

## II. Jurisdiction

█ Montoya and Smith first contend that the trial court lacked jurisdiction to hold them in contempt because they were not parties in the case or officers of the court, nor were they subject to any direct court order. We disagree.

█ The authority to punish contempt derives from the court's inherent power to enforce obedience to its orders. *Kourlis v. Port,* 18 P.3d 770, 773 (Colo.App.2000). This power logically includes the ability to punish non-parties and non-officers who willfully interfere with judicial proceedings. *See Ex parte Segrest,* 718 So.2d 1, 6 (Ala.1998) ("To the extent there has been interference with a court's judicial proceeding, that court has subject matter jurisdiction over that interference. By virtue of the interference, the trial court has personal jurisdiction over any person who is a significant cause of that interference."); *Doe v. Watson,* 507 So.2d 1164, 1165 (Fla.Dist.Ct.App.1987) ("clearly a court has inherent contempt power to punish persons other than parties for violating a valid order"); *see also Seaward v. Paterson,* 1 Ch. 545, 557 (Eng.1897) (Smith, L.J.) ("As regards the law, I have myself no doubt that if a person who knows that an injunction has been granted aids and abets in committing a breach of it the Court of Chancery has jurisdiction to commit him for contempt, although he is not a defendant in the action, and is not a person against whom the injunction has been granted.").

Significantly, the governing rule of civil procedure does not purport to limit the application of contempt to parties, officers of the court, or those subject to direct orders. Rather, it defines contempt broadly to include any conduct by any person that obstructs or interferes with judicial proceedings:

> Disorderly or disruptive behavior, a breach of peace, boisterous conduct or violent disturbance toward the court, or conduct that unreasonably interrupts the due course of judicial proceedings; behavior that obstructs the administration of justice; disobedience or resistance by any person to or interference with any lawful writ, process, or order of the court; or any other act or omission designated as contempt by the statute or these rules.

C.R.C.P. 107(a)(1).

Montoya and Smith also argue that they could not be held in contempt for frustrating the order appointing a visitor because this order was signed by the registrar, not a judge. We reject this argument. Assuming, without deciding, that the registrar's order does not qualify as a court order, Montoya and Smith nevertheless could be held in contempt for willfully obstructing or interfering with the underlying guardianship proceedings.

Because the trial court had jurisdiction over the guardianship proceedings, and because Montoya and Smith obstructed or interfered with those proceedings, we conclude that the trial court had jurisdiction to punish them for contempt of court. And this is true even though Montoya and Smith were not parties in the case, officers of the court, or subject to any direct order.

In reaching this conclusion, we hasten to note what is not at issue here. Montoya and

Smith do not challenge the adequacy of the court's findings or the sufficiency of the evidence supporting its findings. *See* C.R.C.P. 107(d)(1); *In re Marriage of Nussbeck,* 974 P.2d 493, 497 (Colo.1999) (court must find that contemnor willfully refused to comply with a court order). Nor do they argue that the court abused its discretion in holding them in contempt. *See In re Estate of Elliott,* 993 P.2d 474, 478 (Colo.2000) (power of contempt must be used with caution and self-restraint to protect the rights of litigants and the administration of justice). These requirements, more than the limits of jurisdiction, ensure that contempt sanctions are imposed appropriately.

## III. Attorney Fees

We now address the sanctions imposed by the court. Again, our task is limited: the parties focus solely on whether Montoya and Smith should have been ordered to pay Roger Lopez's attorney fees. They do not question any other aspect of the sanctions imposed, and they have refrained from asking us to measure the propriety of the suspended jail sentence against the requirements of C.R.C.P. 107(e).

■ We agree with Montoya and Smith that the court erred in ordering them to pay attorney fees. Although attorney fees may be awarded in connection with remedial contempt, they may not be imposed as part of a punitive contempt sanction. *Eichhorn v. Kelley,* 56 P.3d 124 (Colo.App.2002).

Here, the sanctions were entirely punitive. The court ordered Montoya and Smith to serve a fixed term as punishment for their actions. The sanctions cannot be regarded as remedial because there was no indication that Montoya and Smith had the ability to purge the contempt. *See In re Estate of Elliott, supra,* 993 P.2d at 479 (when remedial sanctions are imposed, the court must make findings of fact regarding the actions constituting the contempt and the present duty and ability to perform the acts required to purge the contempt); *In re Marriage of Nussbeck, supra,* 974 P.2d at 498 ("Unlike remedial contempt, which the contemnor may purge by complying with the court order in question, punitive contempt cannot be so purged. Rather, the punishment imposed must be served by the contemnor because he or she has been convicted of a willful violation of a court order.").

Roger Lopez argues that he should be allowed to recover his attorney fees pursuant to the "private attorney general" doctrine. We disagree.

■ Where authorized, the private attorney general doctrine permits those who undertake legal action for the benefit of society to recover their attorney fees. *See, e.g., Van Alstyne v. Housing Auth.,* 985 P.2d 97, 100 (Colo.App.1999) (pursuant to statute, plaintiffs were entitled to their attorney fees as "private attorneys general, who, through the exercise of their public spirit and private resources, caused a public body to comply with the Open Meetings Law"). The doctrine does not apply here because there is no showing that the contempt action was brought on behalf of the public. Roger Lopez was personally aggrieved by the actions of Montoya and Smith and had an interest in the outcome. *Cf. Denver Ass'n for Retarded Children, Inc. v. Sch. Dist. No. 1,* 188 Colo. 310, 320, 535 P.2d 200, 206 (1975) (private attorney general doctrine is not applicable to one who appears as an interested party).

We similarly decline to remand for findings under § 13–17–102(1), C.R.S.2003. The trial court did not award attorney fees on this basis, and such an award would be inappropriate in any event because Montoya and Smith are not ordinary civil litigants. They are, instead, like defendants in a criminal case. *See Bloom v. Illinois,* 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968) ("Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both."). And like criminal defendants, Montoya and Smith could defend on any ground without fear that they might be required to pay their opponent's attorney fees.

The award of attorney fees is vacated. The order holding Montoya and Smith in

contempt of court and imposing sanctions is otherwise affirmed.

Judge NIETO and Judge WEBB concur.