In re the MARRIAGE OF Patricia M. LODESKI, n/k/a Rychel Patricia M. Johnson, Appellee,

and

Raymond LODESKI, Appellant.

No. 04CA0515.

Colorado Court of Appeals.
Div. II.

Nov. 18, 2004.

Kevin C. Massaro, Englewood, Colorado, for Appellee.

Raymond Lodeski, Pro Se.

LOEB, J.

In this post-dissolution proceeding, Raymond Lodeski (husband) appeals the district court's finding of contempt and imposition of sanctions for changing his military pension to veterans' disability benefits, thereby affect-

ing the property division payments to Patricia M. Lodeski, now known as Rychel Patricia M. Johnson (wife). We affirm in part, reverse in part, and remand for further proceedings.

As part of the property division in the 1995 permanent orders, wife was awarded $436 per month as a fractional portion of husband's military retirement pay, forty percent of which included veterans' disability benefits. Husband was ordered to pay "the amount" to wife until she perfected a wage assignment to obtain payment directly from the military. The permanent orders thus contemplated that the security of the wage assignment would remain in place absent further order of the court. Husband was also ordered to pay wife $300 per month as permanent maintenance.

In 1997, husband filed a motion for modification or termination of maintenance, alleging that a permanent disability completely prohibited him from working. After negotiations, the parties stipulated that maintenance was to terminate after five years and that the agreement was contractual and not subject to modification. The parties also stipulated that, as to wife's "receipt of military retirement, [husband] agrees to pay an additional $37.00 per month to [wife] as a standard of living increase." The magistrate adopted the stipulation as an order of the court in August 1998.

Unbeknownst to wife, husband, during the negotiations for the modification of maintenance, was in the process of converting all his military pay to veterans' disability benefits. The conversion occurred in October 1998, and the $436 monthly payment to wife, which by that time came directly from the military, therefore ceased pursuant to federal regulations.

In March 2003, wife filed a motion for contempt citation, alleging that husband, in violation of the permanent orders, had converted the pension, that the $436 monthly payment had ceased, and that arrearages exceeded $10,000. She asserted that the conversion did not relieve husband of his obligation to pay her share of the retirement.

After an initial hearing, in July 2003, the trial court found that husband had knowledge of the permanent orders entered in 1995, which granted wife a portion of his military pay, and that the direct payment from the military ceased because husband had converted his entire military pension to veterans' disability benefits. The court therefore found husband in contempt for altering wife's payee status and ordered him to pay $473 per month (the original $436 as amended by the order for the $37 increase). The court also imposed a sixty-day jail sentence, but suspended that sentence and set another sentencing hearing for September 2003.

At the September 2003 hearing, the court further continued consideration of the sentencing on the "term and condition" that husband comply with the court's order to submit a financial affidavit within thirty days. The court specifically found that failure to file the affidavit as ordered "can be dealt with by the [c]ourt as a further issue of contempt."

At the next hearing in February 2004, husband had not provided a financial affidavit, and the court then vacated the suspension of the sixty-day jail sentence. Furthermore, the court imposed a $2000 fine, "finding that [husband] has not complied with prior orders of the court." Arrearages of $37,610.20 were reduced to judgment, and husband was ordered to pay wife's attorney fees in the amount of $6409.60. This appeal followed.

## I.

■ Husband contends that, because he has the right under federal law to elect to receive veterans' disability benefits and waive military retirement pay, he cannot be held in contempt for converting his pension. We disagree.

■ Members of the Armed Forces who serve for a specified period may retire with retirement pay. Veterans who become disabled as a result of military service are eligible for disability benefits. To prevent double dipping, a military retiree may receive disability benefits only to the extent that he or she waives a corresponding amount of military retirement pay. *Mansell v. Mansell,*

490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

 Military pensions are controlled in relevant part by the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408 (2002), which authorizes state courts to treat disposable retired pay as property. Such pay specifically excludes, inter alia, any military retirement pay waived in order for the retiree to receive veterans' disability benefits. *Mansell v. Mansell,* supra; *In re Marriage of Riley–Cunningham,* 7 P.3d 992 (Colo.App.1999). Thus, the USFSPA does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived so that a veteran may receive veterans' disability benefits. *Mansell v. Mansell,* supra; see *In re Marriage of Franz,* 831 P.2d 917 (Colo.App.1992) (veterans' disability retirement pay may not be divided as marital property).

However, nothing in *Mansell* prohibits the Colorado state courts from dividing nondisability military retirement benefits between the parties when their marriage is dissolved. *In re Marriage of Riley–Cunningham,* supra. Thus, although husband argues that the permanent orders were "improper" because forty percent of the pension that was divided at that time was disability pay, we perceive no impropriety. Wife's fractional share could be satisfied from the larger portion of the military retirement pay, which did not constitute disability pay, and therefore the permanent orders were not inconsistent with the USFSPA or the holding in *Mansell.*

Further, the permanent orders contemplated that the wage assignment, absent further order of court, would remain in place as wife's security for the "amount" of $436 to be paid to wife. Husband's obligation to pay that amount from any available assets continued, in spite of his unilateral waiver of retirement benefits that rendered the security of the wage assignment a practical nullity. *See Surratt v. Surratt,* 85 Ark.App. 267, 148 S.W.3d 761 (2004)(where order of enforcement did not purport to divide disability benefits, the USFSPA and *Mansell* were not violated, and the nature of the sources with which husband could satisfy his contractual obligation to wife was beside the point); *Krapf v. Krapf,* 439 Mass. 97, 108, 786

N.E.2d 318, 326 (2003)(judgment did not divide veterans' disability benefits in contravention of *Mansell;* judgment merely enforced husband's contractual obligation to wife, which he could satisfy from any of his resources; nothing in USFSPA or *Mansell* precludes a veteran from voluntarily entering into a contract whereby he agrees to pay a former spouse a sum of money that may come from veterans' disability benefits he receives); *Scheidel v. Scheidel,* 129 N.M. 223, 4 P.3d 670 (N.M.Ct.App.2000)(court rejected argument that order specifically required husband to indemnify wife with disability benefit monies; fact that order indicated that direct payment from the military should be accomplished if possible was merely a conditional provision and did not constitute a requirement that husband utilize disability pay to satisfy his obligation to wife); *Price v. Price,* 325 S.C. 379, 383, 480 S.E.2d 92, 94 (S.C.Ct.App.1996)("Given the fact that Husband agreed, after *Mansell,* to pay Wife a percentage of his gross monthly military retirement pay, which included disability pay, he should not be permitted to complain that the family court erred in enforcing the terms of the Agreement.").

It follows that the permanent orders here are not void and therefore constitute a valid order for purposes of contempt. *See Bd. of Water Works v. Pueblo Water Works Employees Local 1045,* 196 Colo. 308, 586 P.2d 18 (1978)(the underlying order in a contempt proceeding is subject to a collateral attack if the order is void for some jurisdictional defect); *Charles Milne Assocs. v. Toponce,* 770 P.2d 1313 (Colo.App.1988)(a party may not be found in contempt for failure to comply with a void order).

We agree with husband that he had the right, under federal law, to elect to receive veterans' disability benefits and waive military retirement pay. *See Krapf v. Krapf,* supra. However, we reject husband's corresponding assertion that, because he exercised this right, the trial court in the contempt action had no jurisdiction to enforce the valid permanent orders.

The Colorado Supreme Court has previously rejected voluntary action taken by a military service member to evade the proper-

ty division provisions of permanent orders. In *In re Marriage of Heupel*, 936 P.2d 561 (Colo.1997), the permanent orders provided that the wife would receive one-half of the twenty-year value of the husband's military service retirement benefits upon his retirement. However, after seventeen years of service, the husband voluntarily elected to switch from active duty to reserve status, and therefore received a lump sum payment under the special separation benefits (SSB) program. The court held that the SSB funds were disposable retirement pay rather than severance pay and, thus, were marital property subject to distribution under state law. The court also held that the trial court did not improperly reopen the dissolution decree when it apportioned the SSB funds.

Although the facts here are different from those in *Heupel* (because, unlike in *Heupel*, the veterans' disability benefits here are not disposable retirement pay and therefore not property subject to division), the underlying reasoning there is instructive:

> [T]o shield a service member's "early out" payment pursuant to the SSB or VSI [voluntary separation incentive] programs from distribution *would provide the service member with the unilateral ability to defeat his or her spouse's interest in military retired pay. See [In re Marriage of] Crawford*, [180 Ariz. 324,] 884 P.2d [210,] 213 [ (Ariz.Ct.App.1994) ] ("An employee spouse cannot defeat the nonemployee spouse's interest in retirement benefits by invoking a condition wholly within his or her control."); *Kelson [v. Kelson]*, 675 So.2d [1370,] 1372 [ (Fla.1996) ](to hold that VSI benefits are not the functional equivalent of retired pay would permit a service-member spouse "to defeat the other spouse's court-awarded interest in military retirement benefits by unilaterally altering the form of those benefits in a manner that was unforeseeable at the time the award was made"). Furthermore, unilateral control to transform marital property into separate property ... would have the undesirable consequence of divesting the nonemployee spouse of a valuable marital asset.
>
> Such unilateral control undermines Congress's intent in legislating the USFSPA .... Congress enacted the USFSPA ... and, thereby, granted state courts the option to divide military pensions upon dissolution. *The unilateral control to negate the future right to receive distributable retired pay—by receiving it as present-day separate property—would seriously undercut the primary purpose of the USFSPA.*

*In re Marriage of Heupel, supra*, 936 P.2d at 569 (emphasis added; footnote omitted).

In light of the supreme court's reluctance to afford a party to a dissolution action the unilateral ability to defeat his or her spouse's interest in military retired pay, we align ourselves with those states, representing the majority view, that enlist equitable theories to prevent such a result. *See Danielson v. Evans*, 201 Ariz. 401, 409, 36 P.3d 749, 757 (Ariz.Ct.App.2001)("decision here [to reallocate property after conversion] is consistent with the majority view in this country"); *Surratt v. Surratt, supra* (noting the growing trend to ensure that former spouses' property interests are protected in the event of a future award of disability benefits to the service member; majority of state courts take equitable action to compensate the former spouse when that spouse's share of the retirement pay is reduced by the other spouse's post-judgment waiver of retirement benefits); *Krapf v. Krapf, supra. But see In re Marriage of Pierce*, 26 Kan.App.2d 236, 240–42, 982 P.2d 995, 998–99 (1999)(trial court "may not do indirectly what it cannot do directly" by reopening final dissolution decree to award "additional property or more payments" to nonmilitary spouse to compensate for "an asset which has significantly declined in value"); *Limbaugh v. Limbaugh*, 71 S.W.3d 1 (Tex.App.2002) (ordering modification of decree by deleting provision requiring husband to make direct payments to wife in the event he waives Navy retirement payments in exchange for an increase in veterans' disability benefits).

Thus, the trial court had the authority to enforce the parties' agreement and the permanent orders, and those enforcement powers included finding husband in contempt and imposing remedial sanctions to compel husband to obey the orders. *See Hapney v. Hapney*, 37 Ark.App. 100, 824 S.W.2d 408

(1992) (wife was awarded $300 per month as her share of husband's military retirement pay; after husband elected to take an increase in his disability benefits, direct payments to the wife were reduced; court found husband in contempt and entered judgment for arrearages); *Hillyer v. Hillyer*, 59 S.W.3d 118 (Tenn.Ct.App.2001)(reversing denial of enforcement through contempt).

## II.

■ Husband also contends that, even if the trial court could enforce the permanent orders by the imposition of sanctions for contempt, the court erred here in finding him in contempt and imposing sanctions. We disagree that the court erred in finding husband in contempt, but agree that the case must be remanded for further findings and a determination of appropriate sanctions.

The definition of contempt includes "behavior that obstructs the administration of justice," as well as "disobedience or resistance by any person to or interference with any lawful writ, process, or order of the court." C.R.C.P. 107(a)(1); *People v. Kriho*, 996 P.2d 158 (Colo.App.1999). Thus, even if the permanent orders cannot be construed as specifically preventing husband from converting military retirement pay to disability benefits, *see Eatchel v. Lanphere*, 170 Colo. 545, 463 P.2d 457 (1970)(a party may be held in contempt only for refusal to do exactly what the court order requires), husband's resistance to, or interference with, the permanent orders fits within the definition of contemptuous conduct. *See In re Lopez*, 109 P.3d 1021, 2004 WL 2278357 (Colo.App. No. 03CA0824, Oct. 7, 2004)(contempt may be based not only on violation of an order, but also on interference with or obstruction of an order).

■ To find a party in contempt for violation of a lawful order of which the party is aware, the trial court must find that (1) the party did not comply with the order; (2) the party's refusal to comply with the order was willful; and (3) the party had the ability to comply with the order. A finding of contempt is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. *Arevalo v. Colo. Dep't of Human Servs.*, 72 P.3d 436 (Colo.App.2003).

■ If, as here, the contempt sanction is intended to be remedial in nature, the trial court must make an additional finding that the party is presently able to comply at the time of the contempt hearing in order to justify the imposition of remedial sanctions. *In re Marriage of Zebedee*, 778 P.2d 694, 698 (Colo.App.1988); *In re Marriage of Crowley*, 663 P.2d 267, 269 (Colo.App.1983). This finding is required because the contemnor must be provided with a means to purge the contempt. *See* C.R.C.P. 107(d)(2) (remedial contempt order must describe the means by which the person may purge the contempt and the sanctions that will be in effect until the contempt is purged); *In re Estate of Elliott*, 993 P.2d 474 (Colo.2000)(when remedial sanctions are imposed, court must make findings regarding the actions constituting the contempt and the present duty and ability to perform the acts required to purge the contempt); *Eichhorn v. Kelley*, 56 P.3d 124 (Colo.App.2002) (remedial sanction for contempt exists primarily to enforce obedience to a trial court's order, and therefore any payments under a remedial sanction order should reimburse the person injured by the contemnor's disobedience); *Sec. Investor Prot. Corp. v. First Entm't Holding Corp.*, 36 P.3d 175 (Colo.App.2001)(other than costs and reasonable attorney fees, a trial court is without authority to require, as a remedial sanction, monetary payments that do not force compliance with or performance of a court order); *In re Marriage of Zebedee, supra.*

Accordingly, a remedial sanction may include imprisonment until performance of the act forming the basis for the contempt. C.R.C.P. 107(d)(2); *see In re Marriage of Nussbeck*, 974 P.2d 493 (Colo.1999). Furthermore, attorney fees may also be awarded as a remedial contempt sanction. *Eichhorn v. Kelley, supra.*

Here, the court specifically noted in its order that wife requested remedial sanctions. In addition, the award of attorney fees, the order to pay the amount due with arrearages, the initial suspension of the sentence, and the lack of language concerning vindication of the court's authority and dignity all indicate that the sanctions were remedial. Accord-

ingly, we conclude that this was a proceeding for remedial contempt sanctions. *See In re Marriage of Zebedee, supra.*

Furthermore, the trial court made the required finding that husband had the ability to comply with the order by finding that he had sole control over the status of the benefits and that he intentionally altered wife's payee status by effectively negating the security of the wage assignment and failing to make further payments as required under the permanent orders. This is sufficient to support the initial finding of contempt. *See Arevalo v. Colo. Dep't of Human Servs., supra.*

However, the court failed to make the additional required finding of a *present* ability to comply, which was necessary for the imposition of remedial sanctions, or to include a purge clause. *See In re Estate of Elliott, supra; In re Marriage of Crowley, supra.* And the $2000 fine was error because unconditional fines constitute punitive sanctions. *See In re Marriage of Nussbeck, supra.* Contrary to wife's assertion, neither the fixed sentence nor the fine were imposed for a separate act of contempt for husband's failure to submit a financial affidavit as ordered, because a separate contempt proceeding was never commenced.

Therefore, on remand, the trial court shall first determine whether husband has a present ability to comply based on his circumstances at the time of the remand hearing, and, if so, then determine appropriate remedial sanctions. *See In re Marriage of Crowley, supra.* Any remedial jail sentence imposed must be indefinite and contain a purge clause.

### III.

Husband's final contention is that the court erred in failing to find that the doctrine of laches applied to bar wife from bringing this contempt action. Husband asserts that, because the conversion occurred in October 1998, wife, by waiting five years, waived her right to prosecute this matter. We disagree.

Laches is an affirmative defense that requires the asserting party to prove that he or she was prejudiced by the opposing party's unconscionable delay. *People v. Robbins,* 87 P.3d 120 (Colo.App.2003)(*cert. granted* Apr. 12, 2004). Whether the elements of the doctrine are proved essentially presents a question of fact to be determined upon the evidence in the case. *Colo. State Bd. of Med. Exam'rs v. Ogin,* 56 P.3d 1233 (Colo.App.2002).

However, laches is an equitable remedy. *People v. Robbins, supra.* Therefore, one seeking application of this doctrine has an obligation to "do equity." *See Golden Press, Inc. v. Rylands,* 124 Colo. 122, 126, 235 P.2d 592, 595 (1951)("courts require that he who seeks equity should do equity and come with clean hands"). The clean hands maxim dictates that one who has engaged in improper conduct regarding the subject matter of the cause of action may, as a result, lose entitlement to an equitable remedy. *Salzman v. Bachrach,* 996 P.2d 1263 (Colo. 2000); *see Ajay Sports, Inc. v. Casazza,* 1 P.3d 267 (Colo.App.2000)(court will not consider a request for equitable relief under circumstances where the litigant's own acts offend the sense of equity to which he or she appeals).

Here, when husband raised the issue of laches, wife argued that laches did not bar this proceeding because husband negotiated the 1998 stipulation with unclean hands by failing to disclose that he was converting the pension and thereby depriving wife of the funds. The trial court rejected husband's request because husband had "unclean hands ... by virtue of his failure to notify at least [wife] of his intent to modify ... her payee status." This finding is sufficient to support the denial of husband's request.

The judgment is reversed as to the imposition of sanctions, and the case is remanded for a determination whether husband has the present ability to comply with the permanent orders and if so, for a determination of appropriate remedial sanctions. In all other respects, the judgment is affirmed.

Judge ROTHENBERG and Judge NIETO concur.